**Herbert D. WEITZMAN, Appellant,**

v.

**Lawrence E. STEINBERG, Joel B. Steinberg and Kenneth W. Merritt, Appellees.**

**No. 05–81–00737–CV.**

Court of Appeals of Texas, Dallas.

July 22, 1982.

Rehearing Denied Aug. 23, 1982.

Charles Rodney Acker, Jenkins & Gilchrist, Dallas, for appellant.

George M. Kryder, III, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellees.

Before AKIN, ALLEN and GUILLOT, JJ.

AKIN, Justice.

This is an appeal from a summary judgment granted appellees-sellers, Steinberg et. al., and against plaintiff, Weitzman, who sued for enforcement of an option contract to purchase a majority interest in a joint venture or to purchase the land owned by the joint venture and, alternatively, for damages for breach of contract. We hold that the option agreement is too vague and indefinite to be enforced as a contract. Accordingly, we affirm.

In 1972, Herbert Weitzman formed a joint venture, MSW Investments, with appellees, Lawrence Steinberg, Joel Steinberg, and Kenneth Merritt, to acquire, own, lease and develop properties located at the northeast corner of Alpha Road and Dallas Parkway. Weitzman owned a 12½% interest in MSW, with appellees owning the remainder. In July, 1980, Larry Steinberg prepared a draft of a letter agreement granting Weitzman an option to purchase an additional 77½% interest in MSW. The letter agreement, revised by Weitzman's attorney, and signed by all the parties, provided:

July 25, 1980

Mr. Herbert D. Weitzman
Henry S. Miller Co.
2001 Bryan Tower, 30th Floor
Dallas, Texas 75201

Re: MSW Investments

Dear Herb:

By this letter I wish to confirm our agreement to grant you an option to acquire from Kenneth M. Merritt, Joel B. Steinberg and me (collectively referred to as the "Majority Owners") an additional 77½% interest (the "Additional Interest") in the MSW Investments ("MSW") properties exclusive of the Gulf Service station tract (thereby causing your entire interest in MSW to be 90%). Although we may mutually agree that the structure of the transaction shall be different, the ultimate economic effect of the transaction shall remain as described in the immediately preceding sentence.

MSW currently owns approximately 358,782 square feet of property (outlined in red on the attached plat drawing) and has under contract the Parker tract (outlined in blue on the attached plat), Turner tract (outlined in yellow on the attached plat) and the Hunter tract (outlined in green on the attached plat). The properties owned by MSW, less the Gulf Service station property, plus the Parker tract, constitute approximately 358,800 square feet and are hereinafter referred to as the "option properties." You currently own 12½% of MSW and the Majority Owners own 87½% of MSW.

Your option price will be at $12.00 per square foot of the option properties less any debt against the property you assume or take subject to. You will have until January 25, 1981, to elect to acquire the Additional Interest, and then, upon electing, you will be obligated to close prior to February 25, 1981. MSW shall have the right to extend the date of closing for up to ninety (90) days to locate suitable real property or partnership interests for the purpose of a tax-deferred exchange. Notwithstanding any extension, whether requested by MSW or by you, the purchase price will increase at the rate of 10% per annum after February 25, 1981.

Each of the following items shall be a condition precedent to your right to exercise the option herein granted; moreover, item (i) and item (ii) shall be obligations on you:

(i) you will arrange financing (in behalf of MSW) for a duration of at least one year in an amount sufficient for MSW to pay the out of pocket costs in order to acquire the Parker tract and for MSW to pay all interest and principal payments coming due on all property owned by MSW through January 31, 1981 (the "Weitz Note");

(ii) MSW will assign to you its contract right to purchase the Turner and Hunter tracts and you agree to purchase such tracts on the terms set out in each such contract and

(iii) you will use your reasonable, good faith efforts to acquire the properties outlined in purple on the attached plat drawing (the "contiguous properties") on terms and conditions acceptable to you.

If you *do not* exercise your option to acquire the Additional Interest, MSW will purchase your position in the Hunter and Turner tracts and any of the contiguous properties you acquire (the "Weitzman Properties") on the same terms and conditions provided in the contract by which you purchase such properties. That purchase price will be a price equal to the sum of (i) the price at which you purchase each of the Weitzman Properties, (ii) all ad valorem or similar taxes paid by you with regard to such properties, (iii) any funds advanced by you pursuant to promissory notes relating to such properties and (iv) interest at the rate of 10% per annum on the funds actually advanced by you from the date each such advance until the consummation of MSW's purchase of your position, from which sum will be subtracted any debt MSW assumes or takes subject to with regard to the Weitzman Properties. In addition, MSW will obtain a refinancing of the Weitzman Note, and will relieve

you of any liability on the Weitzman Note except to the extent of your proportionate ownership of MSW.

In the event you do not exercise your option, MSW's purchase of your position and MSW's refinancing of the Weitzman Note shall occur on or before sixty days after you deliver written notice to the Majority Owners that you are not exercising your option.

If you *do* exercise your option, at the closing MSW will purchase the Hunter and Turner tracts and the contiguous properties at the same price and on the same terms as if you had not exercised your option.

It is understood that their option does not include the property subject to the lease with Gulf Oil Corporation ("Gulf property"). Kenneth W. Merritt, Joel B. Steinberg, you and I will continue to have, respectively, a ⅜, ⅛, ⅛ and ⅜ beneficial interest in such property and the lease with Gulf thereon.

In the event that you exercise your option, you will use good faith efforts to arrange for the development of the option properties, Hunter tract, Turner tract and contiguous properties (which will be owned by MSW), and it is contemplated that you will need to bring in a "money partner" for financing and/or equity participation. It is understood and agreed that any interest in the option properties, Hunter tract, Turner tract and contiguous properties that needs to be given up to any "money partner" will come from your 90% interest and not from the interest of the Majority Owners. Accordingly, Ken will have a ⅜ of 10% interest, Joel a ⅛ of 10% interest and myself ⅜ of 10% interest in MSW.

The tax aspects of your acquiring the Additional Interest in MSW is of major importance to all of us. It is understood and agreed that you, Ken, Joel and I must mutually agree on the form of such acquisition. Possible methods of structuring the acquisition include: (i) through your purchasing from the Majority Owners an additional 77½% in MSW; (ii) MSW selling a 90% interest in the option properties to you and you relinquishing your 12½% interest in MSW; (iii) a new joint venture, of which you own 90% and Ken, Joel and I own an aggregate of 10%, acquiring all the option properties; (iv) MSW becoming a partner in a new joint venture and contributing the option properties and you contributing the Hunter tract, Turner tract and the contiguous properties with the beneficial ownership of Ken, Joel, and myself in the new joint venture being 10% and Ken, Joel and I drawing through such joint venture the purchase price; or (v) some type of tax-deferred exchange. When you return to the country, we will discuss the various methods of structuring this series of transactions and the correlative tax consequences as well as any other details not herein discussed.

If the foregoing accurately sets forth our agreement, I would appreciate it if you, Ken and Joel join in confirming such by signing below on a counterpart of this letter.

Sincerely yours,
/s/ Lawrence E. Steinberg
Lawrence E. Steinberg

CONFIRMED:
/s/ Herbert D. Weitzman
 by M.J. Hopkins
Herbert D. Weitzman by:
Michael J. Hopkins
Attorney-in-Fact
/s/ Kenneth W. Merritt
Kenneth W. Merritt
/s/ Joel B. Steinberg
Joel B. Steinberg

In January of 1981, Weitzman exercised this option, but appellees refused to honor the agreement. Weitzman then sued seeking specific performance of the option agreement or, alternatively, damages for breach of the agreement. Appellees filed a motion for summary judgment contending that (1) the option agreement was too incomplete, vague, indefinite and uncertain to be enforceable and (2) Weitzman had failed to comply with the conditions precedent to

the exercise of the option.[1] The trial court granted summary judgment in appellees' favor and Weitzman now appeals.

Weitzman contends that the option contract was not too incomplete, vague, indefinite or uncertain to be enforced because only the *form* of the transaction remained to be agreed upon by the parties. He argues that the letter agreement was, in *substance,* an enforceable option contract for the sale of a partnership interest in MSW and, only in order to allow the parties flexibility to avoid adverse tax consequences upon the sale of MSW, was the structure of the transaction a term left to be later agreed upon by the parties. Thus, contends Weitzman, when only matters of form are left to future agreement, the contract is sufficiently definite to be enforced. We cannot accept Weitzman's construction of the letter agreement.

 A contract, whether written or oral, must define its essential terms with sufficient precision to enable the court to determine the obligations of the parties. *Estate of Eberling v. Fair,* 546 S.W.2d 329, 333 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). *See Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614, 616 (1962); *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 941 (1944). Courts cannot make contracts for the parties and an agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced. Thus, the trial court had no authority to ask a jury to supply an essential term in the contract which the parties were unable to complete by mutual agreement. *Estate of Eberling v. Fair,* 546 S.W.2d at 334. *See Mooney v. Ingram,* 547 S.W.2d 314, 317 (Tex. Civ. App. —Dallas 1977, writ ref'd n.r.e.) (where agreement leaves an essential term for later determination and it is never determined, no enforceable contract exists).

 The parties agreed in the letter agreement that the "ultimate economic effect" of the transaction would be that Weitzman would acquire "an additional 77½ % interest in the MSW Investments *properties* exclusive of the Gulf Service Station track (thereby causing [Weitzman's] *interest in MSW* to be a total of 90% and the interest of [appellees] to be 10%);" however, the parties intentionally failed to indicate *what* Weitzman was to purchase. The agreement, in fact, provided that the parties might agree either (1) to allow Weitzman to purchase an additional 77½% interest in MSW, or (2) to have MSW sell a 90% interest in the option properties to Weitzman and have Weitzman relinquish his 12½ % interest in MSW, or (3) form a new joint venture between Weitzman and appellees with Weitzman owning a 90% interest, or (4) form a new joint venture between Weitzman and MSW, or (5) to some type of tax-deferred exchange.

The language of other provisions in the agreement was likewise contradictory as to the subject matter of the sale. The agreement established the option price at $12.00 per square foot, provided that the option did not include "the property subject to the lease with Gulf Oil Corporation," contemplated the attachment of a plat of the option properties to the agreement, and also allowed MSW the right to extend the closing date for 90 days to allow MSW time to locate suitable property for a tax-deferred exchange, which indicated a possible sale of real property. The agreement, however, also stated that after the sale, Weitzman's interest in MSW would be a total of 90% and that "any interest in the option properties ... that needs to be given up to any 'money partner' will come from [Weitzman's] 90% interest," and that accordingly, Kenneth Merritt will have a ³/₇ of 10% interest, Joel Steinberg will have a ⅟₇ of 10% interest and Larry Steinberg will have a ³/₇ of 10% interest *in MSW,* indicating a sale of a partnership interest *in MSW.* Thus, the agreement not only omits the form or structure of the transaction, but also omits the very essence of a sale, that which is to be sold. The parties may have agreed after

---

1. Weitzman and appellees stipulate that the trial judge also considered on summary judg- ment whether the option agreement adequately complied with the Statute of Frauds.

further negotiation that any one or a combination of the proposed alternatives would produce the most favorable consequences for all of the parties; however, they failed to agree on what was to be sold. The parties may have agreed after further negotiation that any one or a combination of the proposed alternatives would produce the most favorable consequences for all of the parties; however, they did not do so. In situations such as this, courts will not make a contract for the parties that the parties have failed to make for themselves. Accordingly, we hold that the agreement was nothing more than an agreement to agree.

Nevertheless, Weitzman argues that, regardless of the proposed methods of structuring the transaction, the letter agreement is sufficiently definite to be enforced because appellees, as joint venturers in MSW, owned only a partnership interest and could not contract to convey the real estate owned by MSW. We do not agree. Appellees could either have conveyed their partnership interests in MSW to Weitzman, or as majority owners of MSW, appellees also could have agreed to sell the assets of MSW to Weitzman. *See* Tex. Rev. Civ. Stat. Ann. art. 6132b § 10 (Vernon 1970). The language of the agreement contemplated just such a possibility. Thus, each proposed alternative was a valid possibility to be later negotiated by the parties.

Weitzman also contends that through mutual mistake a plat describing each of the properties was not attached to the letter agreement. Although attaching the plat might have provided a more definite description of the land referred to, the agreement would not have been any more definite as to whether the partnership interest or the land itself was to be the subject of the sale. Consequently, the doctrine of mutual mistake, even if established with respect to the land, would not make this vague contract enforceable.

Weitzman finally contends that appellees should be estopped from denying the existence of a contract because appellees encouraged Weitzman to expend funds in reliance on the agreement when appellees knew Weitzman had not performed the conditions precedent to the exercise of the option. We do not agree. The doctrine of promissory estoppel enforces obligations which would otherwise be barred at law, e.g., an oral contract for the sale of real property, and does not create essential contractual elements where none before existed. *See Boddy v. Gray,* 497 S.W.2d 600, 604–605 (Tex. Civ. App.—Amarillo 1973, writ ref'd). Since the agreement was only an agreement to agree, Weitzman cannot establish an enforceable contract by promissory estoppel where no enforceable contract existed.

Affirmed.