Argued and submitted November 14, 1994, reversed and remanded June 28, 1995

## Violet E. NEISS,
### *Appellant,*

*v.*

## Kenneth E. EHLERS
## and Jill A. Ehlers,
## husband and wife,
### *Respondents.*

(92-1832-E-3; CA A83026)

899 P2d 700

Carl F. Jepsen argued the cause for appellant. With him on the briefs was Warren, Allen, King & O'Hara.

G. Philip Arnold argued the cause for respondents. With him on the brief was Drescher & Arnold.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

Haselton, J., concurring.

**DEITS, P. J.**

Plaintiff appeals from a summary judgment for defendants in this action for breach of contract.[1] We reverse.

In May 1989, plaintiff was an optician, working for a large optical concern in Portland. Defendant Kenneth Ehlers is a licensed doctor of optometry. He and his wife, defendant Jill Ehlers, had recently opened an optical business in Ashland, operating under the name Ashland's Optical Expressions. On May 12, the parties entered into the following agreement:

"LETTER OF AGREEMENT AND INTENT

"The following letter outlines the initial agreement between Kenneth E. and Jill A. Ehlers dba Ashland's Optical Expressions and Violet E. Neiss, Dispensing Optician.

"Salary: $24,000 per year

"Benefits: Medical/Dental Insurance (Company Paid Deductible)

Long Term Disability Insurance

Three Weeks Paid Vacation

Sick Leave as Necessary.

"Additional salary increases, bonuses and benefits shall be given to all parties in accordance with good business practices, subsequent to appropriate legal and accounting advice, and agreed upon by all above named parties.

"Furthermore, in consideration of the particular skills and contributions of Violet E. Neiss to Ashland's Optical Expressions, she shall be granted a one-third interest in Ashland's Optical Expressions as soon as it can be practically arranged [but in no case later than May 1, 1990] through the establishment of an S corporation and/or in

---

[1] Plaintiff also stated claims for fraud and breach of the implied duty of good faith and fair dealing. The trial court granted defendants' motion for partial summary judgment on the contract claim, and that is the ruling giving rise to the issues in this appeal. After plaintiff took a voluntary dismissal of the fraud claim, the trial court entered a final judgment pursuant to ORCP 67 B.

a manner agreed upon by all above named
parties and subsequent to appropriate legal
and other necessary advice."[2]

Plaintiff moved to Ashland and worked for defendants' business for more than two years. During that time, the parties attempted unsuccessfully to negotiate a new agreement, spelling out both the terms of plaintiff's employment and of her acquisition of an ownership interest. After those attempts failed, plaintiff left the business and returned to Portland. She then brought this action, alleging that defendants breached the agreement by not conveying the promised ownership interest. She sought damages, *inter alia*, for wages and benefits that she would have received from defendants had they not breached the agreement; for the expenses and losses that she incurred and other consequences of her move to Ashland; for lost wages and benefits she would have received had she remained employed in Portland; and for the value of the share of the Ashland business that defendants promised, but did not provide her.

In granting the motion for summary judgment, the trial court concluded that there was no enforceable contract between the parties. The court first noted that the agreement of May 12, 1989, and the related oral promise, "did not include an immediate promise" for the transfer of the ownership interest. The court then reasoned:

"The alleged Agreement encompassed both the ownership and employment and * * * they are not divisible; and since the parties were not able to agree on the employment portions, the parties' agreement is too indefinite for enforcement."

The focal point of the trial court's reasoning, and of defendants', is that the 1989 agreement's provisions relating

_____

[2] Although the first two paragraphs do not identify the recipient of the salary and benefits, it is clear from the evidence, and is not disputed, that they describe the terms of employment of plaintiff. The parties' agreement also included the oral component that plaintiff would be employed by the business for 10 years, subject to her choosing to leave earlier.

For convenience of reference, we will use the phrase "employment" terms and the like in the remainder of this opinion to refer to the oral agreement and the parts of the written agreement preceding its last paragraph. We will use phrases such as "ownership" interest and "ownership" terms to refer to the provisions in the last paragraph.

to employment terms and its provisions relating to ownership are indivisible; therefore, if either is unenforceable, neither is enforceable. The trial court and, to a lesser degree, defendants take the view that the employment terms are too indefinite for enforcement, because the efforts to replace them with a new agreement ultimately failed in 1992. However, we agree with plaintiff that the "fact that the parties * * * were unable to agree on a new substitute Agreement does not abrogate the original Agreement of 1989." The failure to agree on a modification simply left the existing terms intact. Consequently, we do not agree that the 1989 *ownership terms* are rendered unenforceable because of the parties' failure to modify the *employment terms* in the 1989 agreement.

Defendants' primary argument, however, is that the agreement is unenforceable because the *ownership provisions themselves* constitute a mere "agreement to agree" and, as such, cannot be enforced. Because defendants regard the provisions in the agreement as indivisible, they therefore conclude that it is unenforceable in its entirety.

■ Plaintiff contends that she is entitled, under the doctrine of promissory estoppel, to some relief in connection with the ownership provisions. We agree with defendants that those provisions comprise only an agreement to agree. *Slayter v. Pasley*, 199 Or 616, 264 P2d 444 (1953). Consequently, plaintiff can prevail in this action, if at all, only on her promissory estoppel theory. Although defendants offer a number of reasons why that theory does not avail plaintiff, they do not raise the basic question of whether the doctrine of promissory estoppel is applicable when the promise involved is an agreement to agree or, for other reasons, is too indefinite or incomplete for enforcement as a contract.

■ Generally, this court does not address or decide issues that the parties do not raise. In this instance, however, the resolution of the unraised issue is so critical to the economy of the process that we will depart from our usual practice: If the only theory on which plaintiff can prevail is inapplicable to the facts as a matter of law and our disposition of the issues that the parties do raise would otherwise lead to a remand, the practical effect would be to reverse the trial court's

judgment and to remand for further proceedings on a non-issue. Moreover, the question of whether promissory estoppel *can* apply to indefinite agreements is "close." There is no controlling Oregon authority, and the courts of other jurisdictions which have addressed the question are divided.

In *Bixler v. First National Bank*, 49 Or App 195, 199-200, 619 P2d 895 (1980), we described the elements of promissory estoppel as

"(1) a promise

"(2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred,

"(3) actual reliance on the promise,

"(4) resulting in a substantial change in position."

We noted in *Bixler* that the promissory estoppel doctrine, as embodied in *Restatement of Contracts* § 90 (1956), had been "adopted" by the Supreme Court in *Schafer et al v. Fraser et ux*, 206 Or 446, 290 P2d 190, 294 P2d 609 (1956). *Bixler*, 49 Or App at 199. Finally, in a footnote, we touched on the question that is presented here, noting:

"If the promise were not sufficiently definite to be enforceable, there is a growing body of law which would, nevertheless, apply the doctrine of 'promissory estoppel' to permit the party relying reasonably on that promise to recover his reliance damages — that is, to make him whole for out of pocket expenses. *See* Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343 (1969). The promise, as such, is not enforced as a contract because it is too indefinite, and the remedy is not co-extensive with that for breach of contract. The remedy may be limited as justice requires. *See* Restatement (Second) of Contracts, § 90 (Tent. Draft, 1973)." *Id.* at 199 n 4.

In Stanley D. Henderson, *Promissory Estoppel and Traditional Contract Doctrine*, 78 Yale L J 343 (1969), the author describes the process, referred to in *Bixler*, by which traditional concepts of promissory estoppel were gradually broadened as section 90 was extended and applied more liberally in the commercial and bargaining contexts. Of particular relevance, Henderson notes that the emerging trend of the case law "sounds a retreat from the common law view that breach of an agreement to agree is not actionable." *Id.* at 359. (Footnote omitted.) More generally, Henderson states

that "Section 90 is also being used as a basis for enforcement of promises which under traditional theory would be held indefinite and hence unenforceable." *Id.* at 361.

The case which Henderson identifies as exemplifying the trend, *Hoffman v. Red Owl Stores, Inc.*, 26 Wis 2d 683, 133 NW 2d 267 (1965), has since become the factual and legal prototype for Illustration 10 to *Restatement (Second) of Contracts* § 90 (1981):

> "10. A, who owns and operates a bakery, desires to go into the grocery business. He approaches B, a franchisor of supermarkets. B states to A that for $18,000 B will establish A in a store. B also advises A to move to another town and buy a small grocery to gain experience. A does so. Later B advises A to sell the grocery, which A does, taking a capital loss and foregoing expected profits from the summer tourist trade. B also advises A to sell his bakery to raise capital for the supermarket franchise, saying 'Everything is ready to go. Get your money together and we are set.' A sells the bakery taking a capital loss on this sale as well. Still later, B tells A that considerably more than an $18,000 investment will be needed, and the negotiations between the parties collapse. At the point of collapse many details of the proposed agreement between the parties are unresolved. The assurances from B to A are promises on which B reasonably should have expected A to rely, and A is entitled to his actual losses on the sales of the bakery and grocery and for his moving and temporary living expenses. Since the proposed agreement was never made, however, A is not entitled to lost profits from the sale of the grocery or to his expectation interest in the proposed franchise from B."[3]

Little purpose would be served by attempting to ascribe a majority and a minority view to the decisions from other jurisdictions. It suffices to say that each position has a substantial number of courts behind it, but that, as indicated by Henderson, the discernible trend of recent decisions is moving away from the view that promissory estoppel is inapplicable as a theory of recovery when the promise is

---

[3] Section 90(1) of the second *Restatement* states:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

indefinite or incomplete. *See* Annot., 48 ALR 2d 1069 (1956) and Later Case Service. We emphasize, however, that this phenomenon is a trend, and not a tide.

Many of the opinions taking one view or the other have simply stated it, or offered minimal explanations. Because our exercise here is to arrive at and explain our reasons for adopting a rule, we have selected the following cases because they do offer explanations that illustrate the rationales for the two positions. In *Lohses v. Atlantic Rich-field Co.*, 389 NW 2d 352, 357 (ND 1986), the court explained its adherence to the view that a definite promise was a prerequisite to the application of promissory estoppel:

> "The Lohses assert that for purposes of an action based on promissory estoppel, the promise need not be as specific and definite as that required for a contract.
>
> "Although some courts have held that the promise giving rise to the application of promissory estoppel need not be so definite with respect to all details that a contract would result if the promise were supported by consideration, *see Janke Construction Co., Inc. v. Vulcan Materials Co.*, 386 F.Supp. 687, 693 (W.D.Wis.1974), *aff'd*, 527 F.2d 772 (7th Cir.1976) (applying Wisconsin law); *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo.1983); *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 275 (1965), other courts have held that the promise or agreement must be clear, definite, and unambiguous as to essential terms. *See Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 630 n. 7 (5th Cir.1985) (applying Texas law); *Jungmann v. St. Regis Paper Co.*, 682 F.2d 195, 197 (8th Cir.1982) (applying Iowa law); *Laks v. Coast Federal Savings & Loan Association*, 60 Cal.App.3d 885, 131 Cal.Rptr. 836, 839 (1976); *Matter of Estate of Graham*, 295 N.W.2d 414, 418-419 (Iowa 1980); *Keil v. Glacier Park, Inc.*, 188 Mont. 455, 614 P.2d 502, 506-507 (1980); *Weitzman v. Steinberg*, 638 S.W.2d 171, 176 (Tex.Civ.App.1982); *H. Molsen & Co., Inc. v. Hicks*, 550 S.W.2d 354, 356 (Tex.Civ.App.1977). The latter view evidences a reluctance to enforce incomplete agreements based upon preliminary negotiations and discussions or upon an agreement to negotiate the remaining terms of a contract in the future. *See Keil, supra; Weitzman, supra.*
>
> "We agree with those courts which require that the promise or agreement be clear, definite, and unambiguous as to essential terms before the doctrine of promissory estoppel

may be invoked to enforce an agreement or to award damages for the breach thereof."

In *Keil v. Glacier Park, Inc.*, 188 Mont 455, 462, 614 P2d 502, 506 (1980), the court provided a more succinct explanation for the same conclusion: "The terms of the promise must be certain, as there can be no promissory estoppel without a real promise." In *Weitzman v. Steinberg*, 638 SW2d 171, 176 (Tex Civ App 1982), the court premised its adoption of the same view on the following distinction:

> "The doctrine of promissory estoppel enforces obligations which would otherwise be barred at law, *e.g.*, an oral contract for the sale of real property, and does not create essential contractual elements where none before existed. *See Boddy v. Gray*, 497 S.W.2d 600, 604-605 (Tex. Civ. App. — Amarillo 1973, writ ref'd). Since the agreement was only an agreement to agree, Weitzman cannot establish an enforceable contract by promissory estoppel where no enforceable contract existed."

The rationale for the more expansive application of the doctrine is expressed in two opinions of the Colorado Supreme Court. It said in *Vigoda v. Denver Urban Renewal Authority*, 646 P2d 900, 905 (Colo 1982):

> "The purpose of promissory estoppel is to provide a remedy, under certain circumstances, to those who rely to their detriment upon promises which the promisor should have reasonably expected to induce such reliance. In the absence of a promissory estoppel cause of action, these promises would not be enforceable, generally due to a lack of consideration or a failure of the parties to reach a mutual agreement. The development of the cause of action reflects 'an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all . . . dealings.' *Peoples National Bank v. Linebarger Construction Co.*, 219 Ark. 11, 17, 240 S.W.2d 12, 16 (1951).

> "We believe that the doctrine as set forth in the Restatement should be applied to prevent injustice where there has not been mutual agreement by the parties on all essential terms of a contract, but a promise was made which the promisor should reasonably have expected would induce action or forbearance, and the promise in fact induced such action or forbearance. *See Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965)."

Consequently, the court held that promissory estoppel could be invoked to provide relief in connection with what amounted to an agreement to agree.

In *Kiely v. St. Germain*, 670 P2d 764, 767 (Colo 1983), the court further explained why the promissory estoppel doctrine should apply to indefinite or incomplete promises:

"The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise. Justifiable reliance on the representations of another is the gist of this action. *Vigoda v. Denver Urban Renewal Authority, supra; Mooney v. Craddock*, [55 Colo App 20, 530 P2d 1302 (1974)]. The doctrine represents, in part, a modest extension of the basic contract principle that one who makes promises must be required to keep them. *See* Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343 (1969).

"However, promissory estoppel is not defined totally in terms of contract principles. The recognition that justifiable reliance resulting in a reasonable and foreseeable detrimental change of position will support an award of compensatory damages is also grounded upon principles of fair dealing familiar to equity jurisprudence. *See Vigoda v. Denver Urban Renewal Authority, supra*; 1A A. Corbin, *Contracts* § 204 (1963). *See also Restatement (Second) of Contracts*, § 90 comment a (1981); *C & K Engineering Contractors v. Amber Steel Co., Inc.*, 23 Cal.3d 1, 587 P.2d 1136, 151 Cal.Rptr. 323 (1978). It is often appropriate when parties have not mutually agreed on all the essential terms of a proposed transaction. *See e.g., Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965). Contrary to defendant's argument, fraudulent conduct by the promissor [*sic*] is not an element of promissory estoppel. Other civil remedies and criminal sanctions are available to deter fraudulent conduct. When injustice to a promisee who reasonably and justifiably relies on a promise can be prevented only by recognizing a right of recovery from the promissor, [*sic*] neither the lack of a written contract nor the absence of fraudulent conduct can defeat the claim for recompense."

■■. In Oregon, it is well recognized that promissory estoppel is not a "cause of action" in itself, but is a subset of

and a theory of recovery in breach of contract actions. *Hill v. Mayers*, 104 Or App 629, 631, 802 P2d 694 (1990), *rev den* 311 Or 187 (1991); *City of Ashland v. Hoffarth*, 84 Or App 265, 270, 733 P2d 925, *rev den* 303 Or 483 (1987). That does not mean, however, that, as a theory of recovery, promissory estoppel cannot provide a basis for relief under circumstances where traditional contract remedies would not. Indeed, as the quoted passage from *Kiely* suggests, its availability as a basis for recovery under those circumstances is the essential reason for the existence of the promissory estoppel principle. It would be a *nonsequitur* to read the cases that require promissory estoppel to be asserted in the context of a breach of contract claim as meaning that promissory estoppel cannot be a basis for relief within the claim, independently of any other contract remedies; promissory estoppel can *only* become necessary as a remedy for an unperformed promise *if* no traditional contractual remedy is available for the nonperformance. *Schafer*, 206 Or at 468-81. The court in *Schafer* said that, when the tests for promissory estoppel are met, "justice generally requires the enforcement of the promise through the medium of an appropriate contractual remedy." *Id.* at 472. Promissory estoppel necessarily *is* that remedy when the tests are met and other contractual remedies are unavailable.

In our view, the better reasoning supports the conclusion that promissory estoppel can apply, under appropriate circumstances, to promises that are indefinite or incomplete, including agreements to agree. The cases that take the contrary view appear to rest on the premise that that application of the doctrine is a bootstrap operation by which promises that are illusory, in that they lack the precision to be enforceable through normal contract remedies, can be enforced in a different guise. That premise is flawed, for at least two reasons. First, promissory estoppel would not generally entail "enforcement" of the same kind or extent that the traditional remedies provide. As indicated in the current section 90, *see* note 3, and in the *Bixler* footnote quoted earlier, promissory estoppel remedies are more flexible in nature than contract remedies and are aimed at compensating the promisee for damages that result from actions in reliance on the promise, rather than providing comprehensive contract relief for the breach of the indefinite promise itself.

The second reason for our rejection of the premise is related: The evil to be rectified through promissory estoppel is not the breach of the promise, but the harm that results from the promisor's inducement and the promisee's actions in reliance. The fact that a promise is indefinite, incomplete or even incapable of enforcement according to its own terms, does not mean that *no* redress should be possible for the damage that directly flows from the promisee's reliance on the promise.

Nothing that we find in the stated rationales for a different rule, and nothing that occurs to us, persuades us that the applicability of promissory estoppel should depend *generally* on why the promise is contractually unenforceable, or that the indefiniteness of a promise makes it inappropriate to apply promissory estoppel as a remedy. Obviously, "indefiniteness" is a question of degree, and the facts of specific cases may be such that the promise is not only too indefinite for enforcement as a contract, but is so illusory that it could not reasonably have been acted on or foreseen as an inducement to action. However, this is an appeal from a summary judgment. The existence of the elements of promissory estoppel set forth in *Bixler*, along with other material questions of fact, were not conclusively negated or resolved by the evidence in the trial court proceedings.

As noted earlier, although defendants do not question whether promissory estoppel is potentially applicable at all to agreements to agree, they do make arguments concerning the application of the doctrine to *this* agreement to agree. Defendants maintain that plaintiff received actual consideration for her services. They conclude that promissory estoppel does not enter the picture, because it does not apply in circumstances where there is actual consideration. *See Hill.* Presumably, defendants' premise is that, even if the actual consideration was only for plaintiff's employment services, the putative indivisibility of the provisions in the 1989 agreement forecloses her from pursuing a remedy — by promissory estoppel or otherwise — for the alleged nonperformance of the ownership promise.[4]

---

[4] The point that the concurring opinion makes is, as it acknowledges, not responsive to any issue any party raises. Although we might agree with the understanding of "actual consideration" that the concurrence states, we do not think that

■ We do not agree that that question could be resolved by summary judgment on this record. The 1989 agreement describes certain specific payments and benefits as the consideration in its employment portions, and that is the consideration that plaintiff actually received. However, the paragraph relating to the ownership interest describes that promise as being "in consideration of the particular skills and contributions of [plaintiff]" to the business. Although the language is not conclusive, in itself, to establish that the parties intended that the two different kinds of consideration *independently* support the two different promises, it is ambiguous on the point, and there is a factual question of intent. *Henderson v. Morey*, 241 Or 164, 169, 405 P2d 359 (1965). The question of divisibility is integrally related to the question of whether the consideration was unitary or apportioned among the promises, and it too turns on the same factual question. *Id.* at 169. The answer to that question is determinative of whether the consideration that plaintiff received was for the ownership promise on which she bases her claim. Because there are unresolved questions of fact, the granting of summary judgment was error, insofar as plaintiff's promissory estoppel theory is involved.

Defendants argue in the alternative that, if a contract giving plaintiff an ownership interest were consummated, it would be illegal and unenforceable.[5] Defendants contend that it is unlawful for a person who is not a licensed doctor of optometry to hold an ownership interest in an

---

defendants use that label in its conventional sense or that the concurring opinion deals with the argument that defendants in fact make. Their point appears to be that plaintiff is entitled to no relief, because she was paid everything that was due her under the agreement and that the payment for her services was the full consideration for the only terms on which the parties' minds met. That point is correct, as far as it goes. However, payment for the services would not preclude a promissory estoppel remedy for breach of the ownership interest promise if the two promises were divisible and, as explained in the text, the unitary or apportioned nature of the consideration bears on divisibility. Defendants' argument is a viable one for them to develop on remand, factually and legally, despite the fact that it is phrased in a way that gives an unconventional meaning to a conventional phrase, and the fact that the conventional concept that the phrase usually conveys would not aid defendants. Notwithstanding their word choice, defendants' point is clear.

[5] The trial judge rejected that argument, and defendant's direct a cross-assignment of error to the ruling.

optometry business, because the unlicensed person would thereby be engaged in the practice of optometry.

However, nothing in Oregon's applicable statutes or rules supports that broad a proposition. Defendants rely on *State ex rel Sisemore v. St'd Opt'l Co.*, 182 Or 452, 188 P2d 309 (1947), where the court held that a corporation could not lawfully operate an optometry business through licensed optometrist employees. However, we do not read that case as precluding *any* ownership share, including a noncontrolling minority interest, by *any* unlicensed entity. The vice in *Sisemore* was that the corporation, not the licensed employee, predominated over and controlled the practice and the employee's professional services. Although we do not now decide whether *all* interests that fall short of majority or controlling ones are necessarily beyond the rationale of *Sisemore*, we do hold that not all one-third interests, regardless of the business structure and the role of the unlicensed party, are within the *Sisemore* rationale. In this case, the structure and role never reached the point of definition.

Moreover, as we earlier concluded, if plaintiff is to recover for the denial of the one-third ownership interest, it can only be on her promissory estoppel theory, and not on the basis of any contractual terms relating to conveyance of the interest; no final terms were agreed to. Defendants attempt to have it both ways; however, unless *any* possible agreement by which plaintiff acquired an ownership interest would be illegal, which we have concluded is not the case, defendants cannot prevail both on the ground that the agreement to agree was too indefinite to be enforced and the ground that, had a definite agreement been reached, it would have been illegal. Stated another way, defendants' illegality argument cannot be sustained on the basis of their hypotheses about the terms of an agreement that they have successfully argued did not exist.

The trial court erred by granting summary judgment on the contract claim.[6]

---

[6] The trial court's disposition and the parties' arguments on appeal relate to whether defendants can be *liable* on the claim. So does our opinion. No question is presented at this stage of the case, and we decide nothing, about the nature of the damages that plaintiff may be entitled to recover if she establishes liability on her promissory estoppel theory.

Reversed and remanded.

**HASELTON, J.,** concurring.

I fully endorse the majority's reasoning, with one exception. The majority, in addressing defendants' "actual consideration" argument, presumes, as do defendants, that the operative inquiry is whether the promisor (here defendants) gave actual consideration for the promisee's performance. 135 Or App at 229-30. That has it backwards.

The correct focus is, instead, on whether the *promisee* has given actual consideration. If so, promissory estoppel may be inapposite. *Hill v. Mayers*, 104 Or App 629, 802 P2d 694 (1990), *rev den* 311 Or 187 (1991).

That focus derives from the very nature of promissory estoppel, by which the estoppel, arising from the promisee's detrimental reliance, is deemed a substitute for actual consideration. *Hill*, 104 Or App at 631; *City of Ashland v. Hoffarth*, 84 Or App 265, 270, 733 P2d 925, *rev den* 303 Or 483 (1987). *Accord Schafer et al v. Fraser et ux*, 206 Or 446, 468-72, 290 P2d 190, 294 P2d 609 (1956) (generally describing doctrine). Thus, whether the promisor gave actual consideration is immaterial.

Here, defendants did not assert, much less show as a matter of uncontroverted fact, that plaintiff gave actual consideration for the ownership provisions of their agreement. Accordingly, I concur that the trial court erred in granting summary judgment.