## CIRCUIT COURT OF THE CITY OF RICHMOND

Andrews Large & Whidden, Inc.

v.

Capman & Wood, Inc.

Case No. LA-1370-1

BY JUDGE MELVIN R. HUGHES, JR.

September 19, 1995

This case was before the court on August 22 on defendant's Demurrer to plaintiff's Motion for Judgment. As usual the court will assume all the facts well pleaded as true for purposes of the ruling.

The motion for judgment is in two counts. The first alleges a breach of contract and damages therefrom. The second alleges damages due on a claim of promissory estoppel.

In early 1993 plaintiff, Andrews Large & Whidden, Inc., a general contractor, was putting together a bid to build the Culpeper Water Treatment Project. On or about February 11, 1993, while Andrews was accepting bids from subcontractors, defendant, Capman and Wood, Inc., made an unsolicited telephone bid to provide masonry work for the job. According to Andrews, Capman offered to do the masonry work for $126,700, plus $2,000 for a letter of credit. Andrews used Capman's price in computing its final bid. After the bid was accepted, Andrews submitted a written form contract to Capman for signing. Capman refused and did not perform the masonry work, forcing Andrews to look elsewhere for other subcontractors to do the same work. Eventually Andrews paid $106,210.83 more for the work than was quoted by Capman and now seeks recovery of that sum.

Attached to the motion for judgment is a written subcontract Andrews sent to Capman after it had submitted its bid. The written subcontract, Capman contends, varies the terms of the offer it made for the job and

constitutes Andrews' rejection of that offer and is a counteroffer. The court agrees. An acceptance varying the terms of an offer rejects the offer. *Bloomberg-Michael Furniture Co. v. Coppes Bros. & Zook*, 141 Va. 18, 19 (1925). That is what happened -- according to allegations in Count I. Rather than a "standard form contract" as Andrews suggests, the writing contains many more and different terms than those mentioned in Capman's oral offer. These facts do not allege a contract between the parties and thus the Demurrer as to this count is sustained.

As to promissory estoppel alleged in the second count, the Supreme Court of Virginia has "assume[d] without deciding that the doctrine of promissory estoppel applies in Virginia." *Stone Printing and Mfg. Co. v. Dogan*, 234 Va. 163, 165 (1987). For purposes here, this court will make the same assumption. In *Stone Printing*, the court applied the Restatement Second of Contracts, § 90(1) (1981), and found all the requirements had not been met. As Andrews correctly points out, the elements of a promissory estoppel claim are (1) a promise; (2) a reasonable and foreseeable reliance on the promise; (3) resulting detrimental actions or forbearance by the promisee; and (4) an injustice avoidable only by enforcement of the promise.

Andrews alleges it relied on Capman's bid by including it in the computation of the price in its bid on the project. An essential element of promissory estoppel is detrimental reliance on a promise. According to the stated facts, there is no detrimental reliance because, while Andrews used Capman's quote in its bid on the project, there is no allegation that it declined any other bids to take Capman's, only to have Capman not live up to its promise to provide the work. Andrews does not allege that as a result of Capman's promise it did not accept another subcontractor's bid which was lower than the price it ultimately paid for the work. In addition, Andrews does not claim that as a result of Capman's promise it lost money on the project overall. Andrews does not claim that its position would have been different as a whole had Capman not made the promise.

Promissory estoppel can only become necessary as a remedy for an unperformed promise if no traditional contractual remedy is available for the nonperformance. *Schafer v. Fraser*, 206 Or. 446, 468-81 (1973). When the tests for promissory estoppel are met, "justice generally requires the enforcement of the promise through the medium of an appropriate contractual remedy." *Id.* Promissory estoppel is the appropriate remedy when the tests are met and other contractual remedies are unavailable. *Neiss v.*

*Ehlers*, 135 Or. App. 218, 228, 899 P.2d 700, 706-07 (1995). Here, there is no showing that contract remedies are not otherwise available.

For these reasons, the demurrer is sustained. Plaintiff shall have ten days to file any amended motion for judgment. Defendant shall have five days from receipt to file any responsive pleading.

## January 25, 1996

This case was before the court on November 14, 1995, on defendant's Demurrer to plaintiff's Amended Motion for Judgment. As usual the court will assume all the facts well pleaded as true for purposes of the ruling.

The amended motion for judgment, like the first, is in two counts. The first alleges a breach of contract and damages therefrom. The second alleges damages due on a claim of promissory estoppel. The amended pleading incorporates a number of exhibits as did the first. The amendment adds some details regarding the parties' dealings but the salient points are unchanged.

In early 1993 plaintiff, Andrews Large & Whidden, Inc., a general contractor, was putting together a bid to build the Culpeper Water Treatment Project. On or about February 11, 1993, while Andrews was accepting bids from subcontractors, defendant, Capman and Wood, Inc., made an unsolicited telephone bid to provide masonry work for the job which was contemporaneously recorded by Andrews on its "Phone-in-Bid" form. According to Andrews, Capman offered to do the masonry work for $126,700, plus $2,000 for a letter of credit. Other bids were received that day for the masonry work including a bid by Long Masonry of Virginia to do the work for $158,800. Long Masonry's bid was the next lowest bid after Capman's bid.

Andrews called Capman twice on bid day. In the first call, Capman was asked to confirm its bid. Dan Capman confirmed the bid. During the second call, Mr. Capman was requested to confirm the bid in writing and to provide a scope of work. After rejecting all other bids for the work in favor of the bid submitted by Capman, Andrews submitted its bid to Culpeper on February 11, 1993. On February 23, 1993, Capman gave Andrews its standard form written confirmation of its oral bid made on February 11, 1993. This document is attached to the Amended Motion For Judgment and contains an acceptance section at the bottom which is unsigned. Andrews received Capman's confirmation on February 24, 1993.

After Andrew's bid for the project was accepted, Andrews submitted a written standard form contract to Capman for signing. Capman did not

raise any objection to the form or content of the standard contract and never gave Andrews any basis to believe that Capman would not perform the work as bid other than the fact that Capman never signed and returned the contract. On April 15, 1993, almost a month after Andrews sent Capman the form contract to be signed, Capman attended a pre-construction meeting held by the Town of Culpeper.

Capman did not perform the masonry work, forcing Andrews to look elsewhere for other subcontractors to do the same work. Eventually Andrews paid $106,210.83 more for the work than was quoted by Capman and now seeks recovery of that sum. Capman's refusal to perform the masonry work also caused Andrews to fall behind schedule. Andrews was assessed $35,000 in liquidated damages by the Town of Culpeper for the delays. Andrews also seeks recovery of that sum. Use of Capman's price in computing and submitting its final bid to Culpeper, Andrews contends, constitutes an acceptance of Capman's oral offer.

### Count I: Contract Claim

Attached to the motion for judgment is the written subcontract Andrews sent to Capman after it had submitted its bid. Capman contends this document varies the terms of the offer it made for the job and constitutes Andrews' rejection of that offer and is a counteroffer.[1] The court agrees. An acceptance varying the terms of an offer rejects the offer. *Bloomberg-Michael Furniture Co. v. Coppes Bros. & Zook*, 141 Va. 18, 19 (1925). That is what happened — according to allegations in Count I. Rather than a "standard form contract" as Andrews suggests the writing contains many more and different terms than those mentioned in Capman's oral offer as Andrews has pleaded.

The next question to consider is whether Capman accepted Andrews' counteroffer. Capman never signed the contract that was sent to it on March 19, 1993, or made any other express acceptance of the counteroffer.

Another question is whether Capman made an implied acceptance. Acceptance can be inferred from the acts and conduct of the offeree. *Bernstein v. Bord*, 146 Va. 670 (1926). Upon receipt of Andrews' counteroffer, Capman did not object to any of the new provisions, but instead, remained silent. In the absence of circumstances from which an acceptance may be implied, an acceptance will not be presumed from a mere failure to decline

---

[1] Andrews has not discussed the terms of the standard form but rather has maintained that acceptance occurred when it used Capman's bid in its bid on the project.

a proposal. *Boone v. Standard Accident Ins. Co.*, 192 Va. 672 (1951). On April 15, 1993, a pre-construction meeting was held by the Town of Culpeper. According to Andrews, all of its subcontractors, including Capman, attended this meeting for the purpose of receiving the Town's final plans and specifications. Absent any allegation of previous course of conduct which would prove the contrary, or any partial performance by Capman of its duties under the proposed contract, the court does not find that attending a meeting held by a third party constitutes conduct from which acceptance can be inferred.

Because Andrews' standard form repudiated Capman's previous offer, the court deems it a counteroffer. Because there was no acceptance by Capman of the counteroffer, the Demurrer as to this count is again sustained.

### Count II: Promissory Estoppel Claim

Regarding promissory estoppel alleged in the second count, the Supreme Court of Virginia has "assume[d] without deciding that the doctrine of promissory estoppel applies in Virginia." *Stone Printing and Mfg. Co. v. Dogan*, 234 Va. 163, 165 (1987). For purposes here, this court will make the same assumption.

Promissory estoppel is a remedy for an unperformed promise if no traditional contractual remedy is available for the nonperformance. *Schafer v. Fraser*, 206 Or. 446, 468-81 (1973). When the tests for promissory estoppel are met, "justice generally requires the enforcement of the promise through the medium of an appropriate contractual remedy." *Id.* Promissory estoppel is the appropriate remedy when the tests are met and other contractual remedies are unavailable. *Neiss v. Ehlers*, 135 Or. App. 218, 228, 899 P.2d 700, 706-07 (1995). Here, there is no showing that contract remedies are not ordinarily available.

Moreover, it is problematical that promissory estoppel is recognized in Virginia. The court believes, as Capman contends, that even if the doctrine applies, there can be no recovery where Capman made no unilateral promise to Andrews but merely made an offer which Andrews rejected by tendering the form contract containing new and additional terms which were never a part of Capman's offer.

For these reasons, the demurrer is sustained without leave to amend and this action dismissed with prejudice.