Eric OJA, Plaintiff—Appellant,

v.

**BLUE MOUNTAIN COMMUNITY COLLEGE; Michael Shea; Travis Kirkland, Defendants—Appellees.**

No. 04–35534.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2005.

Decided June 5, 2006.

As Amended on Grant of Rehearing in Part July 20, 2006.

Dana L. Sullivan, Esq., McKanna Bishop Joffe & Sullivan LLP, Portland, OR, for Plaintiff–Appellant.

Lisa E. Lear, Esq., Bullivant Houser Bailey, PC, Portland, OR, for Defendants–Appellees.

Before: FERGUSON, KLEINFELD, and GRABER, Circuit Judges.

## MEMORANDUM *

■ Oja claims, under 42 U.S.C. § 1983, that he was denied a property interest in his employment without due process of law. There can be a property interest in an employment context only if there is a "legitimate claim of entitlement" to employment.[1] There can be a legitimate claim of entitlement only if there is a binding contract. This property interest is further defined by state law.[2]

■ Oja did not have a valid, binding contract. By statute, a professor does not have a valid employment contract until the college's Board of Education approves it.[3] The Board never approved Oja's contract, so Oja had no property interest in his employment, and his § 1983 claim fails. Oja's breach of contract and breach of the covenant of good faith and fair dealing claims, therefore, fail as well.

■ The promissory estoppel claim likewise fails because only the Board can make a binding promise.[4] Oja can establish a claim for promissary estoppel by showing that 1) the college made a promise; 2) the college could foresee the promise would induce him to quit his job and move; 3) he actually relied on the promise; and 4) he substantially changed his position in reliance on the promise.[5] Oja can-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

2. *Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988).

3. Or.Rev.Stat. § 341.290 (2003).

4. *Id.*

5. *See Neiss v. Ehlers,* 135 Or.App. 218, 899 P.2d 700, 703 (1995).

not establish that the college made a promise.

■ Oja can prevail on his fraud claim if he shows 1) that Defendants made a false representation 2) with the knowledge that it was false, 3) intending Oja to rely on the statement, 4) that he justifiably relied on the representation and 5) he was damaged as a result of the reliance.[6] With respect to Defendant Blue Mountain, Oja cannot establish a direct theory of misrepresentation because he cannot show that he "justifiably relied" on the representation, because without Board approval, an offer was not within the college's "lawful powers."[7]

■ However, we reverse the summary judgment of the misrepresentation claim on a theory of vicarious liability under Or. Rev. Stat. § 30.265(1). Oja established a genuine issue of fact as to all five elements on a misrepresentation claim against Shea. Shea was the person with authority to advise people in Oja's position whether they were hired, and Shea did so advise Oja, unambiguously and emphatically. But because Shea's actions giving rise to this claim occurred within "the scope of [his] employment," the claim can only be made against Defendant Blue Mountain.[8]

■ Section 659.815 makes it illegal to use any "false ... representation ... concerning the amount or character of the compensation to be paid" to persuade or engage an employee to "change from one place to another."[9] There was never any doubt about the amount and character of the compensation to be paid. Instead, there was an allegedly false representation as to the existence of the position the compensation for which was known. A later effort to mitigate Oja's damages did not alter the nature of the original representation.

Each party shall bear their own costs.

AFFIRMED in part, REVERSED and REMANDED in part.

FERGUSON, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's assessment of Eric Oja's misrepresentation claim against Defendants Blue Mountain Community College and Michael Shea and Oja's claim under Oregon Revised Statute § 659.815. *See* maj. dispo. at 600. I must respectfully dissent, however, from the majority's conclusion that summary judgment was appropriate as to Oja's due process and contract-based claims.

In June 2002, Eric Oja was offered a position as a physics instructor at Blue Mountain Community College. He was given a contract and assurances that his position was "as official as it gets." Based on these assurances, Oja resigned his prior tenured teaching position and moved his family across Oregon in anticipation of his new position with the college. Because of budget shortfalls, however, the college's new president failed to recommend that the college's Board approve Oja's contract. The college then claimed the contract was not binding without Board approval and denied Oja the secure position he originally had been offered.

Based on these facts, Oja brought the following six claims against the college and individual defendants Michael Shea and Travis Kirkland: (1) denial of due process

---

**6.** *Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1221 (9th Cir.1999).

**7.** *Or. ex rel. Dept. of Transp. v. Hewett Professional Group.,* 321 Or. 118, 895 P.2d 755, 762–63 (1995) (citations omitted).

**8.** OR.REV.STAT. § 30.265(1)(2003).

**9.** OR.REV.STAT. § 659.815 (2003).

under 42 U.S.C. § 1983; (2) misrepresentation of the security of the position in violation of Oregon Revised Statute § 659.815; (3) breach of a binding employment contract; (4) promissory estoppel; (5) breach of the contractual duty of good faith and fair dealing; and (6) intentional misrepresentation. The District Court granted summary judgment in favor of the college and the individual defendants with regard to all six claims.

The majority would affirm the District Court as to the due process, contractual, and promissory estoppel claims. While I agree that Oja's promissory estoppel claim was properly dismissed on summary judgment,[1] I believe that a genuine issue of material fact remains as to whether Oja and the community college entered into a binding contract. Furthermore, because the employment contract could not be terminated at-will and Oja may not have received all the process he was due, the District Court's summary judgment order regarding Oja's due process, breach of contract, and breach of contractual duty of good faith and fair dealing claims should be reversed.

I.

The majority summarily concludes that Oja has no legitimate claim of entitlement to employment, on which he could base his due process and contractual claims, because Oregon Revised Statute § 341.290 requires community college board approval of a professor's employment contract before that contract becomes valid and binding. Maj. dispo. at 599. The meaning of the Oregon statute, and of the accompanying regulations that govern college procedure, however, is not as clear as the majority asserts. In fact, conflicting regulations demonstrate that there is an ambiguity as to who, the Board or the college president, has approval rights over employment contracts.

Oregon Revised Statute (ORS) § 341.290 states that the board of education of a community college district "shall be responsible for the *general* supervision and control of any and all community colleges operated by the district." ORS § 341.290 (2003) (emphasis added). The Board "*may* ... employ administrative officers, professional personnel and other employees, define their duties, terms and conditions of employment and prescribe compensation therefor." ORS § 341.290(1) (2003) (emphasis added). A plain reading of this statute does not give the Board exclusive control over hiring; it only grants general control over all community college concerns, and notes that the "terms and conditions" of employment of professional personnel *may* be one of those concerns.

The ambiguity inherent in the statute becomes apparent upon reading Administrative Procedure 23.33.1, the Blue Mountain Community College Board's description of the procedure to be followed when hiring professional employees. Administrative Procedure 23.33.1 explicitly states that "the selection *and employment* of persons to fill authorized positions on the professional staff has been *delegated to the President.*" (emphasis added). This delegation immediately follows a description of the Board's authority generally to approve the creation and maintenance of positions. Yet, it is the President who is given the power to "employ" specific persons. At the same time, however, in outlining the process for selecting applicants, the regu-

---

1. I disagree with the majority's reasoning regarding the promissory estoppel claim. Oja's employment contract may have been binding on the college. This claim nonetheless fails because of possible constructive notice and lack of actual authority.

lation indicates that only following approval by the President "and the Board of Education" will an offer of employment be made.[2] Additionally, Board Policy 0.18 states the Board's "understanding" that decisions regarding "proposed contracts to be offered to professional personnel" will be referred to the Board. Therefore, the administrative regulations both delegate hiring power to the President and inconsistently continue to require Board approval of employment contracts.

These conflicting directives demonstrate ORS § 341.290 is unclear as to whether the Board retains the exclusive right to approve employment contracts. Additional evidence of the intention of the drafters of ORS § 341.290 and the community college administrative procedures is necessary to resolve this ambiguity. Therefore, the District Court inappropriately concluded on summary judgment that Oja did not have a valid employment contract. Whether the contract is valid remains an open question so long as it is not clear whether Board approval of the contract was necessary.

### A.

If Oja had a valid employment contract, then he also had a property interest in his employment that could not be revoked without due process. See *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir.1988) (stating that, under Oregon law, a property interest in public employment arises if statutory provisions, or a contract authorized by

statute, specifies that the employee can only be fired for cause).

Once Oja signed his employment contract, the employment relationship, by its own terms, could only be terminated "in accordance with established terms and conditions stated in the collective bargaining agreement." The referenced Faculty Collective Bargaining Agreement requires just cause for the termination of any employee, except in the case of the non-renewal of a probationary employee, who may be non-renewed for "any cause." This non-renewal provision, however, does not convert the employment contract of every probationary employee, such as Oja, into an at-will employment contract. *Cf. Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 775–77 (9th Cir.1982) (holding that an Oregon probationary teacher, subject to a one-year contract, had a "legitimate claim of entitlement and a property interest in continued employment" when he was dismissed mid-year in violation of the terms of his contract).

Oja's termination, before he began teaching at the college, was not a "non-renewal" because, by its terms, non-renewal only occurs *after* one year of employment.[3] Instead, Oja's termination is analogous to a mid-term firing, which could only occur with "just cause." See *Vanelli*, 667 F.2d at 777 n. 4 (holding there is a "critical distinction" between the non-renewal of a contract and a mid-year dismissal of a probationary employee, with the latter conferring a protectible property interest when the dismissal could only be for cause).[4] Therefore, because Oja's employ-

---

**2.** I also note that the college did not follow the procedure outlined in these regulations when hiring Oja. The college offered the position to him, and sent him an employment contract, prior to obtaining Board approval. According to Shea, this is standard procedure when hiring new instructors, but it directly contravenes the requirements of Administrative Procedure 23.33.1.

**3.** Even a non-renewed employee is entitled to some process, e.g., an informal hearing before the Board to discuss the reasons for the non-renewal.

**4.** The fact that Oja's position was terminated after he signed his employment contract, but before he began teaching at the college, does not change the analysis. *Cf. Kirschling v.*

ment relationship could only be terminated for cause once he signed the employment contract, he had a property interest in his employment.

The deprivation of such a property interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (internal quotation marks omitted). In determining what process is due, this Court balances Oja's private interest, the risk of an erroneous deprivation of that interest, and the college's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A public employee is entitled to notice of the reasons for termination, an explanation of the public employer's evidence, and an opportunity to be heard. *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

The District Court concluded that even if Oja had a binding employment contract, he received all the process he was due because he was able to frequently talk with Shea, the college's human resources representative, and Kirkland, the college president, regarding the reasons for termination of his contract. Oja had a very strong private interest in employment with the college, especially considering he quit his previous tenured teaching position and moved across the state of Oregon in reliance on his new position. In light of this strong interest, Oja's conversations with Shea and Kirkland did not satisfy his right to be heard, or reduce the risk of an erroneous deprivation of his interest, especially since these two officials were far from neutral decision makers. Given the opportunity to present his situation to the Board, Oja may have been able to retain his instructor's position because of the compelling nature of his private interest in the employment.

For these reasons, if Oja had a valid, binding employment contract with the college, then he did not receive the process he was due before that contract was terminated. Since a material question of fact remains as the whether Oja's contract was binding, the District Court erred by granting summary judgment as Oja's due process claim.

### B.

The District Court similarly erred in dismissing Oja's claims regarding breach of contract and breach of the covenant of good faith and fair dealing on the grounds that Oja's contract was not binding on the college, or even if binding, the contract was an at-will agreement that could not give rise to any obligations on the part of the college. For the reasons given above, there is a material question as to whether Oja's employment contract was binding on the college. Additionally, the contract was not an at-will employment agreement. Therefore, we should reverse the summary judgment order as to Oja's breach of contract and breach of the covenant of good faith and fair dealing claims.

KLEINFELD, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's interpretation of Oregon Revised Statute § 659.815. This section makes it illegal to use any "false ... representation ... concerning the amount or character of the compensation to be paid" to persuade or engage an employee to "change from one place to another."[1] Oja established at

*Lake Forest Sch. Dist.,* 687 F.Supp. 927, 933–34 (D.Del.1988) (holding that a protected property interest can be created prior to the commencement of employment).

1. OR.REV.STAT. § 659.815 (2003).

least a genuine issue of fact as to whether the college made a false representation—that the "character" of his compensation would be a full-year tenure track position, when it was actually a one-quarter non-tenure track position—to induce his move.

Therefore, I would reverse on this issue as well.