Argued and submitted July 18, affirmed in part, reversed in part,
and remanded for entry of a new judgment November 17, 1980

## BIXLER et ux,
### *Respondents,*
*v.*
## FIRST NATIONAL BANK
## OF OREGON et al,
### *Appellants.*

## (No. 78-52L, CA 14851)

619 P2d 895

Peter C. Richter, Portland, argued the cause for appellants. With him on the brief were James N. Westwood and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Sam A. McKeen, Klamath Falls, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

This action involves defendant First National Bank's[1] alleged breach of an agreement to loan plaintiff[2] money for the purchase of real property to be farmed by plaintiff and to be secured by a mortgage on plaintiff's home. Defendant appeals from a judgment entered on a jury verdict awarding plaintiff segregated amounts as follows: $8,000 for farming costs he incurred in reliance on the promise to loan, $7,000 for loss of value of the premises, and $3,000 for lost profits on crops. Defendant's principal contentions are that the trial court erred in:

(1)  denying its motion for a directed verdict,

(2)  submitting to the jury the claim for the loss in value of the premises, because it is not a proper item of damages in this action, and

(3)  submitting any of plaintiff's other damage claims, because there was insufficient evidence to support them.

We agree that there was error, and reverse in part.

In considering defendant's motion for a directed verdict, we view the evidence in the light most favorable to plaintiff, and accord him the benefit of all favorable inferences which may reasonably be drawn from the evidence. In doing so, we resolve evidentiary conflicts in plaintiff's favor. *Green v. Uncle Don's Mobile City,* 279 Or 425, 427, 568 P2d 1375 (1977).

From the evidence, the jury could have found the facts set forth below. Plaintiff, through his real estate agent Theodore Paddock, attempted to purchase farm property owned by Donald Johnson. Plaintiff and Johnson agreed on a negotiated sales price of $136,000 with $20,000 down, subject to the condition that plaintiff obtain suitable financing for the down payment. On April 2, 1975, plaintiff

---

[1] Defendant Robert Dyer is a branch manager for defendant First National Bank of Oregon. For convenience, Dyer and the Bank will be referred to as defendant, or the bank.

[2] Raymond Bixler was the sole remaining real party in interest at the time of trial and, therefore, will be referred to singularly as plaintiff.

and Johnson executed an earnest money agreement incorporating those terms.

Plaintiff then sought to refinance his home by borrowing $58,000, out of which he intended to satisfy his existing home mortgage ($38,000) and to use the remaining $20,000 for the down payment on the farm. On April 11, 1975, plaintiff submitted an application for a $58,000 loan to the bank's Klamath Falls office. Mr. Dyer, the bank's loan officer, subsequently informed plaintiff that the loan would be limited to the lesser of $55,000 or 80 percent of the appraised value of the property securing the loan. Plaintiff was advised that the bank required an appraisal before the loan could be completed and that the bank would accept as security only the house, out-buildings, and five acres of the 25 acre parcel comprising plaintiff's home property.

The bank's appraisal was substantially lower than anticipated, so Dyer ordered a second appraisal. He then told plaintiff that the bank would loan 80 percent of the new appraised value, whatever it turned out to be. Shortly thereafter, plaintiff, Paddock, and Johnson's real estate agent each told Dyer that planting season was upon them. They explained to Dyer that plaintiff had to know if the loan would be consummated in order to determine whether he should plant crops. Plaintiff and Paddock testified that each of them on separate occasions told Dyer that plaintiff would have to expend money to begin farming, and that Dyer told each of them, "[N]o problem with the money * * * go ahead and farm the property," and "I will loan 80 percent of the appraisal price up to a maximum of $55,000, that you can count on."

Even if the bank's appraisal would not support a loan of $55,000, plaintiff testified that his savings, coupled with another loan he could have obtained using his remaining 20 acres as security, would have been sufficient to make up the required down payment. Plaintiff began farming the land on the strength of Mr. Dyer's promise that an 80 percent loan would be made. Subsequently, the bank, without explanation, refused to make any loan to plaintiff[3]

---

[3] There is evidence that the bank's second appraisal would have justified a loan of $48,000, but that information was not related to plaintiff because the bank decided not to make any loan secured by the property.

and plaintiff was unable to consummate the purchase after expending money and labor planting crops. In June, 1975, the ranch was sold to another buyer for $150,000.

## DIRECTED VERDICT

■ ■ At the close of the evidence, the bank moved for a directed verdict, which was denied by the court's submitting the case to the jury. Defendant contends that as a matter of law any promise it made was too indefinite to be enforceable. However, the record is clear that the bank agreed to loan the lesser of $55,000 or 80 percent of the appraised value of plaintiff's home property, and at the time of the loan application the bank filled out a Truth in Lending Disclosure Statement, which, although not an agreement or commitment to loan, set forth the terms of the proposed loan and the annual interest rate. There was sufficient evidence from which the jury could have found a promise sufficiently definite to be enforced.[4]

Nevertheless, defendant contends there was no consideration for the promise. The trial court submitted the case to the jury under Restatement of Contracts, § 90, which was adopted in Oregon in *Schafer et al v. Fraser et ux,* 206 Or 446, 290 P2d 190, 294 P2d 609 (1956). That section provides:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of Contracts, § 90 (1956).

■ In determining when action renders a promise enforceable, the principal criteria are:

(1)  a promise,

---

[4] If the promise were not sufficiently definite to be enforceable, there is a growing body of law which would, nevertheless, apply the doctrine of "promissory estoppel" to permit the party relying reasonably on that promise to recover his reliance damages—that is, to make him whole for out of pocket expenses. *See,* Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L. J. 343 (1969). The promise, as such, is not enforced as a contract because it is too indefinite, and the remedy is not co-extensive with that for breach of contract. The remedy may be limited as justice requires. *See* Restatement (Second) of Contracts, § 90 (Tent. Draft, 1973).

(2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred,

(3) actual reliance on the promise,

(4) resulting in a substantial change in position. 206 Or at 472. When those broad tests are met, "justice generally requires the enforcement of the promise through the medium of an appropriate contractual remedy." Id.

■ Although the evidence is conflicting, the jury could have found that plaintiff reasonably relied on defendant's promise that a loan, not to exceed 80 percent of the appraisal, would be made to him, and that his actions in reliance took place after discussing with defendant his need to start planting if he was going to buy the farm, at which time he was told to go ahead. There was sufficient evidence to submit the case to the jury. *Wagner v. Kaiser Foundation Hospitals,* 285 Or 81, 589 P2d 1106 (1979).

## DAMAGES

■ Whether all of the damages claimed are recoverable in this action, or were properly submitted to the jury, is more problematical. Plaintiff sought to recover the difference between what he claimed was the market value of the Johnson property, $150,000, and the price at which he contracted to purchase it, $136,000. In other words, plaintiff sought consequential damages based upon the benefit of his bargain. There was no evidence, and plaintiff does not now claim, that defendant was aware that the farm was worth any more than the $136,000 plaintiff had negotiated to pay for it. Even if we assume that damages for loss of a bargain may be characterized as consequential damages, they would not be recoverable for breach of a contract to loan money unless the lender knew of facts making the loss foreseeable when the contract was made.[5] Restatement,

---

[5] Moreover, recovery for breach of a contract to lend money is ordinarily limited to the difference between the interest rate of the breached agreement and the rate at which the borrower procures a substitute loan, together with incidental expenses incurred. *Investment Co. v. Smither,* 276 Or 837, 845, 556 P2d 955 (1976). Defendant does not contend that it was incumbent on plaintiff to allege and prove that he was unable to procure another loan in time to purchase the farm, and we do not consider that question. We note, however, that there is some testimony that plaintiff approached a number of lending institutions regarding a refinancing loan prior to contacting defendant.

Contracts, § 343 (1932); 1 Williston, Contracts, § 1411 (1968); 5 Corbin, Contracts, § 1078 (1964).[6]

Accordingly, those damages were not recoverable here and should have been withdrawn from the jury.

Defendant's final argument is that plaintiff did not prove with sufficient particularity his damage claims for lost profits from the oat crop and for miscellaneous farming expenses. We agree with respect to the oat crop, but not with respect to the other items.

Plaintiff's initial claim for loss of crops was in the amount of $21,885. Included in that figure was an alfalfa crop which plaintiff did not plant, and the trial court withdrew damages for loss of that crop leaving a balance of the claim for lost crops in the amount of $7,660. The evidence was that plaintiff planted 40 acres of oats; later that spring, the purchaser of the farm (Mr. Cross) planted another 40 acres of oats in which plaintiff had nothing invested. The crops, including the alfalfa, were harvested by Cross, who grossed about $24,000. It cost him $2,115 to bale the crops, leaving $21,885 "net" before deducting the other costs of planting, growing, harvesting and hauling.

It is apparent that even after eliminating the alfalfa crop, and submitting plaintiff's claim of $7,660 for lost crops, the information on which the jury was left to determine the damages is inadequate. Apparently, that figure is the gross amount received from all but the alfalfa crop, less the cost of baling. There is, however, no evidence with respect to the other costs necessary to arrive at what might be profit. Neither is there any evidence as to whether the crop planted by plaintiff was more or less productive than that planted by Cross on 40 acres. Plaintiff argues here that "other expenses that were involved, if any," were a matter of argument to the jury.

We cannot develop from the evidence any basis, other than speculation, on which the jury could determine

---

[6] Plaintiff's initial claim was that his expenditure of labor and money increased the value of the farm; however, at the close of the evidence he was permitted to amend his complaint to allege that such expenditures accounted for only a part of the increase in value and that the property was worth $150,000 at the time he negotiated its purchase.

the amount of profits, if any, derived from the oat crop planted by plaintiff. This aspect of the case is similar to *Meyer v. Harvey Aluminum,* 263 Or 487, 501 P2d 795 (1972), where the court reversed a verdict for loss of a fruit crop because the evidence showed only the gross income without any deductions for growing and harvesting. We conclude that the evidence with respect to lost profits is too speculative, and the verdict for those damages must be set aside. *See Sachs v. Precision Products,* 257 Or 273, 476 P2d 199 (1970); *Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 291 P2d 709, 56 ALR2d 382 (1955).

■       Plaintiff's miscellaneous damage claim represents various farming expenses, including labor, equipment, parts, tools, seed, and fuel, which were incurred by plaintiff in reliance on defendant's promise. Actual damages must be established by evidence upon which their existence and amount may be determined with reasonable certainty, *Parker v. Harris Pine Mills, Inc., supra,* and "when compensatory damages are susceptible of proof with approximate accuracy the necessary evidence must be supplied." *Porter Const. Co. v. Berry et al.,* 136 Or 80, 93, 298 P 179 (1931).

■       Plaintiff testified that the actual value of the labor performed by him and his family, computed on the basis of hourly wages, was $3,227. There was also evidence that plaintiff accepted approximately $800 in cash and produce from Johnson pursuant to a contingency agreement, wherein Johnson agreed to pay plaintiff for his farming work if plaintiff's loan fell through.[7] The evidence regarding the Johnson agreement is relevant to the issue of the extent of plaintiff's labor damages, but we cannot say on this record that plaintiff was paid in full for his labor, or that Johnson agreed to pay plaintiff in full. It is apparent that plaintiff's damage claim should have been reduced by the amount he admitted having received from Johnson, but defendant made no such request at trial. There was sufficient evidence to support plaintiff's claim, and the jury was entitled

---

[7] Defendant contends that plaintiff's "contingency agreement" with Johnson makes it clear that plaintiff did not actually rely on defendant's promise to make a loan. Certainly it is strong evidence, but we cannot say that it disproved reliance as a matter of law. Plaintiff said he relied, and it is not clear exactly what the "contingency agreement" covered.

to reach its own conclusion on the basis of the conflicting evidence. There is no way of knowing from the verdict how much of the $8,000 awarded was attributable to labor.

██ ██ Defendant also challenges the equipment portion of plaintiff's miscellaneous damage claim. Plaintiff assumed the remaining three years of a five-year lease held by Mr. Paddock on certain farm implements, and used that equipment on the Johnson property. Plaintiff paid Paddock $8,000 as the first yearly installment under the lease, payment being made by plaintiff forgiving an $8,000 debt owed him by Paddock. Plaintiff used the equipment on the Johnson property for about one month. Thereafter he used the equipment in custom farming work for about one year, and then returned the equipment to Paddock and cancelled his obligation under the lease. There was evidence from which the jury could have concluded that plaintiff would not have assumed the equipment lease but for his decision to proceed to farm the Johnson property.

Defendant's contention that it should not be held responsible for the entire $8,000 lease cost might have merit if the issue had been properly raised. Under general contract law, a plaintiff is required to take reasonable steps to avoid the enhancement of his damages. However, the burden of proving that a plaintiff failed to avoid further damage falls on the defaulting party. *Enco, Inc. v. F.C. Russell Co.,* 210 Or 324, 311 P2d 737 (1957). Although there was evidence that plaintiff used the equipment for custom farming activities, no evidence was adduced regarding the portion of the year's lease cost properly allocable to such activities, or what, if any, income plaintiff derived from them.

Defendant neither proved that plaintiff avoided a portion of the $8,000 loss, nor requested an instruction on the avoidable consequences rule. We conclude that plaintiff proved the equipment lease claim with reasonable certainty under the circumstances, and that on this record submission of the claim was not error.

To summarize, we hold that defendant's motion for a directed verdict was properly denied, but that there was insufficient evidence to submit to the jury the issues of lost profits and loss of the value of the premises. However, each

element of plaintiff's miscellaneous reliance damages was recoverable, and thus was properly submitted to the jury on the record made. Accordingly, we reverse that portion of the judgment awarding lost profits and lost value of the premises, and affirm the judgment for miscellaneous reliance expenses.

Affirmed in part, reversed in part, and remanded for entry of a new judgment.