37 P.3d 233 (2002)
178 Or. App. 610
EDEN GATE, INC., Respondent,
v.
D & L EXCAVATING & TRUCKING, INC., Appellant.
D & L Excavating & Trucking, Inc., Appellant,
v.
Eden Gate, Inc., Respondent, and
Suzanne R. Hurford, Carolyn J. Hurford, and The Commercial Bank, Defendants.
9806-04475 and CV98262; A106227 (Control) and A107375
Court of Appeals of Oregon.
Argued and Submitted August 24, 2001.
Decided January 9, 2002.
*234 Margaret H. Leek Leiberan, Portland, argued the cause and filed the briefs for appellant. With her on the opening brief was Richard A. Weill, Troutdale.
Brian D. Chenoweth, Portland, argued the cause for respondent. With him on the brief were Christopher A. Rycewicz and Rycewicz & Chenoweth, LLP.
Before LANDAU, Presiding Judge, and BREWER and SCHUMAN, Judges.
SCHUMAN, J.
This appeal stems from two cases, consolidated on appeal by stipulation of the parties, concerning a contract between D & L Excavating and Trucking, Inc. (D & L) and Eden Gate, Inc. (Eden Gate). The contract called for D & L to decommission an underground storage tank on Eden Gate's property and to remove nearby contaminated soil. In one case, a Multnomah County court found that D & L had breached the contract. The court entered judgment for damages in Eden Gate's favor. D & L appeals from that judgment. In the other case, a Yamhill County court also entered judgment in favor of Eden *235 Gate, concluding that the Multnomah County court's decision preclusively established that Eden Gate owed no money to D & L and that D & L therefore could not foreclose a lien it held on Eden Gate's property. The Yamhill County court also awarded Eden Gate attorney fees, including fees incurred in the Multnomah County litigation. D & L appeals from those judgments as well. We affirm the Multnomah County court: D & L breached the contract. Because we conclude, however, that the Multnomah County case did not preclude litigation of the claims at issue in the Yamhill County case, we reverse the Yamhill County court insofar as it granted summary judgment to Eden Gate, dismissed the lien against Eden Gate, and awarded Eden Gate attorney fees. We remand to Yamhill County for further proceedings.
Only the Multnomah County court adjudicated the underlying substantive dispute between the parties, and it did not make any findings of fact. However, it did rule that Eden Gate was the prevailing party. We therefore assume that the court found facts consistent with its judgment, Mathews v. Federated Services Ins. Co., 122 Or.App. 124, 132, 857 P.2d 852, rev. den. 318 Or. 25, 862 P.2d 1305 (1993), and we review the evidence in the light most favorable to Eden Gate, Sutherlin School Dist. No. 130 v. Herrera, 120 Or.App. 86, 91, 851 P.2d 1171 (1993). From that evidence, so viewed, the court could have found these facts.
Eden Gate owned a restaurant that was destroyed by fire in 1997. In the process of demolishing the remains and preparing to rebuild, Eden Gate's general contractor discovered a long-unused underground heating oil storage tank and some nearby soil that contained hazardous chemicals. Under the "Recycled Lands Act," now codified as ORS 465.200 et seq., and implementing rules promulgated by the Oregon Department of Environmental Quality (DEQ), the tank and the more seriously contaminated soil had to be removed. Consequently, on December 8, 1997, Eden Gate entered into a written contract with D & L, under which D & L agreed to (1) decommission the underground tank "as per DEQ regulations," (2) excavate and remove "contaminated soil," (3) backfill the area from which that soil had been removed, (4) perform "one soil sample per every 14 tons of contaminated soil to confirm that remaining dirt is clean," (5) supply necessary "paperwork as required by DEQ," and (6) complete all of that work "in substantial and workmanlike manner according to standard practices." For this work, Eden Gate agreed to pay a fee of $500 plus $129.50 for every ton of contaminated soil hauled away.
D & L began by taking one soil sample from near the tank and having it tested in a lab. The results showed 570 parts per million (ppm) total petroleum hydrocarbons (PTH). Whether DEQ regulations require soil with that level of contamination to be removed depends on whether the site is a "Level III" or a "Level II" site. A site's level depends, in turn, on certain of its features, for example whether it is near groundwater and what kind of soil predominates there. A Level III site can tolerate up to 1,000 ppm of PTH. A Level II site, however, can tolerate up to only 500. See OAR XXX-XXX-XXXX. D & L, as the subcontractor in charge of removal, had the responsibility to determine the appropriate level. It classified the predominate soil type as "silts and fine sands," which, when factored in to the appropriate scoring grid, yielded a determination that the site was Level II. In fact, the predominate soil type was "dense clay," which would have yielded a determination that the site was Level III. In short, D & L's error led it to conclude that the soil immediately surrounding the oil tank needed to be removed under DEQ regulations, when in fact it did not. Indeed, some expert testimony at trial indicated that DEQ would not have required removal of soil with a PTH level of 570 even if the site were Level II. See generally OAR ch. 340, div. 122.
D & L then removed 450 tons of soil, considerably more than it had informally estimated would be necessary. It did not have any of this soil tested by a laboratory. Instead, in order to determine whether to continue removing soil after the first test, D & L had employees look at samples with the naked eye, smell them, and submerge them in water; if they saw or smelled evidence of *236 oil, they kept digging and hauling. The project was completed in March 1998. By that time, D & L had removed approximately 1,100 tons of soil, some of which had PTH levels above 1,000 ppm. Eden Gate made partial payment, but at completion, D & L claimed that Eden Gate still owed the balance, $29,158.32, and, in May 1998, filed a construction lien in Yamhill County.
In June 1998, Eden Gate filed a complaint against D & L in Multnomah County alleging, among other things, breach of contract and seeking damages of $150,000 in addition to a declaratory judgment that it did not owe D & L the $29,173.32 underlying D & L's construction lien in Yamhill County (the outstanding debt plus the $15 lien filing fee).
D & L, for its part, after unsuccessfully moving to change the venue of Eden Gate's suit to Yamhill County, in August 1998 filed its own claim against Eden Gate in Yamhill County, alleging, among other things, breach of contract and seeking to foreclose on its construction lien. Still in Yamhill County, Eden Gate filed a counterclaim asserting 10 affirmative defenses and seeking attorney fees under ORS 87.060(5), the statute governing construction liens. The parties then stipulated to hold the Yamhill County case in abeyance while the Multnomah County case was tried.
That Multnomah County trial occurred on March 17, 1999. Two days later, the court issued a letter opinion stating, without explanation or detail:
"The Court finds for the plaintiff on the breach of contract claim in the amount of $29,173.32. The Court finds for the defendant on all the remaining claims."
Judgment was entered on April 1. D & L filed a notice of appeal on April 30. On June 4, the Multnomah County court issued a letter announcing that Eden Gate was the prevailing party and was entitled to costs. Because one of the "remaining claims" on which D & L had prevailed was Eden Gate's claim for a declaratory judgment that it no longer owed D & L money, and D & L believed that this result implied that Eden Gate did owe D & L money, the parties asked the court to "clarify" its earlier letter opinion. It attempted to do so by adding the following to its letter opinion on the issue of attorney fees and costs:
"The plaintiff prevailed on its first claim for relief (Breach of Contract). * * * The plaintiff's fourth claim for relief sought a declaratory judgment regarding the Yamhill County lien for debts outstanding. The court did not reach the validity of the lien."
Back in Yamhill County, both parties filed summary judgment motions based on the outcome of the Multnomah County case. D & L argued that, in finding against Eden Gate on its claim for a declaratory judgment that the lien should be dismissed, the Multnomah County court had necessarily decided that, in fact, the lien should not be dismissed; Eden Gate, therefore, was precluded from now arguing that it should be. Eden Gate, on the other hand, argued that, in finding for Eden Gate on the breach of contract claim, the Multnomah County court had necessarily decided that Eden Gate did not owe D & L any money and that D & L, therefore, was precluded from now arguing that the lien was still valid. The issue was complicated by the fact that the Multnomah County court had awarded Eden Gate damages in the exact amount, to the penny, that D & L claimed under the lien, leading D & L to the conclusion that the Multnomah County court was attempting to create a "wash" by offsetting the amount Eden Gate owed D & L on the contract by the amount of damages Eden Gate had suffered by virtue of D & L's breachand failing, because the ruling both deprived D & L of the amount of the lien plus made it liable for the amount of damages D & L had to pay Eden Gate.
Basing its decision at least partly on the Multnomah County court's "clarification," the Yamhill County court concluded that when the Multnomah County court
"found D & L owed Eden Gate money on the breach of contract claim, this had the effect of saying the balance was not due to D & L. This is the very issue in the case before this court. Further, with no money due D & L, there is no basis for a lien. There are no issues in this case, then, that were not litigated and decided in *237 the Multnomah County case. D & L is precluded from re-litigating this issue."
The court also awarded Eden Gate attorney fees, including fees incurred in the Multnomah County case, because they were "reasonably related to the defense of the lien foreclosure in Yamhill County."
On appeal, D & L assigns error to the Multnomah County court's judgment in favor of Eden Gate on its breach of contract claim; to the amount of damages the Multnomah County court awarded to Eden Gate; to the Yamhill County court's denial of D & L's motion for summary judgment; to the Yamhill County court's grant of Eden Gate's summary judgment; to the Yamhill County court's dismissal of D & L's lien against Eden Gate; and to the Yamhill County court's award of attorney fees to Eden Gate.

I. BREACH OF CONTRACT
We review the interpretation of a contract as a matter of law, Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997), but where the trial court's interpretation depends on factual determinations, we accept those determinations if supported by "any competent evidence." Boehm & Co. v. Environmental Concepts, Inc., 125 Or.App. 249, 255, 865 P.2d 413 (1993).
Eden Gate alleged that D & L breached the contract by, among other things, hauling away more soil than the contract specified, thereby breaching both the specific term requiring excavation of contaminated soil and the general term requiring D & L to perform in "a workmanlike manner according to standard practices." To evaluate those allegations, we must first determine whether the contract called on D & L to remove all soil containing any contamination or only soil that was contaminated according to DEQ standards, because whether D & L hauled more soil than was necessary and whether it performed in "a workmanlike manner according to standard practices" depends on what its objective was.
The contract specifies that D & L will "excavate contaminated soil" and "[h]aul contaminated soil" to a disposal site. The term "contaminated soil" is not defined in the contract; we therefore determine its meaning through standard methods of contract interpretation. We begin with the text and context; proceed to extrinsic evidence of the parties' intent if the text and context do not resolve all ambiguities; and, if ambiguity remains after the second step, we resort to maxims of construction. Yogman, 325 Or. at 361-64, 937 P.2d 1019.
Here, the text and context of the contract are highly suggestive. The oil tank is to be decommissioned "as per DEQ regulations," and D & L is responsible for all "[p]aperwork as required by DEQ." Clearly, the purpose of the contract is to bring the property into compliance with DEQ regulations. From that, it is reasonable, but not strictly necessary, to infer that "contaminated soil" refers to soil that has to be removed under applicable DEQ rules.
Extrinsic evidence of the parties' intentions, moreover, confirms the inference. Daniel Riehl, one of the owners of D & L, testified that D & L was responsible under the contract for determining what soil was contaminated. He further testified that a reasonable definition of "contaminated soil" was "soil that has to be removed under the DEQ applicable regulations." Linda Riehl, D & L's other shareholder, testified that D & L would not have removed any soil that DEQ rules did not require it to remove. Eden Gate's president testified that he understood the contract to be for removing soil in order to bring his property into compliance with DEQ rules.
Finally, because D & L drafted the contract, we construe in Eden Gate's favor whatever ambiguity remains after scrutiny of intrinsic and extrinsic sources. Heinzel v. Backstrom, 310 Or. 89, 96, 794 P.2d 775 (1990). We therefore conclude that the term "contaminated soil" in the contract refers to all soil that has to be removed under the applicable DEQ rules and only that soil. Consequently, we must uphold the trial court's finding that D & L breached the contract if there is any competent evidence that it removed soil beyond what was required by DEQ regulations or if it made the determination about what soil to remove in an unworkmanlike manner contrary to *238 standard practices. The record contains such evidence in abundance.
Two expert witness, a compliance and cleanup specialist for DEQ and a former compliance officer with a private company, testified that there was some likelihood DEQ would have issued a "no further action" letter without requiring any soil removal whatsoever. Thus, the court heard competent evidence that D & L not only removed more soil than the applicable DEQ rules required, but quite possibly did not have to remove any soil at all.
Further, the record contains evidence indicating that D & L erroneously categorized the site as one on which soil was contaminated if it contained over 500 ppm of PTH, when in fact the site could tolerate soil with up to 1,000 ppm. That error, one could infer, demonstrates unworkmanlike performance and led to excessive excavation.
Finally, the contract required D & L to take "one soil sample per every 14 tons of contaminated soil to confirm that [the] remaining dirt is clean." Instead, it excavated 450 tons before taking a second sample. As Eden Gate points out, 35 samples should have been taken by that point. D & L argues that it took adequate samples using the crude "look and smell" method, but an expert testified that neither looking nor smelling is a reasonable method of determining whether soil is contaminated above DEQ levels.
Considering this evidence in the record, we affirm the judgment of the Multnomah County trial court that D & L breached its contract with Eden Gate.

II. AMOUNT OF DAMAGES
D & L also assigns error to the amount of damages the Multnomah County court awarded Eden Gate for D & L's breach. We will affirm a trial court's decision on compensatory damages if any evidence supports it. Brasch v. Quan, 162 Or. App. 472, 476, 986 P.2d 1183 (1999).
Eden Gate received an award of $29,173.32. As determined above, evidence supports the trial court's finding that D & L breached the contract by removing soil that applicable DEQ rules did not require it to remove. One of Eden Gate's expert witnesses testified that the job should have cost between $3,000 and $6,000, provided that the contractor had approached it in a reasonable and prudent manner and had acted in accordance with industry standards. Another expert, a licensed owner of a heating oil tank cleanup business, testified that the job should have cost $5,500, but that $6,500 would have been reasonable using the tools that D & L had used. These figures complement the conclusion, supported by evidence, that Eden Gate's property could have received DEQ approval without the removal of any soil whatsoever. Thus, because Eden Gate paid D & L $52,585.00, there is evidence it was overcharged at least $46,000, even without considering the additional amount that D & L alleges is outstanding. We therefore conclude that the award of $29,173.32 is not excessive.
D & L also contests the damages on the ground that there is no apparent connection between the precise amount awarded and any particular evidence in the record. That contention lacks merit. We can find no authority for the proposition that a defendant can successfully challenge an award of damages that is less than the amount justified by the evidence. A defendant who successfully demonstrated facts sufficient to prevail on such a claim would in essence be proving that he or she has received too much; the error would be beyond harmless. If, in fact, the Multnomah County court awarded Eden Gate damages in an amount matching D & L's outstanding lien claim in an attempt to create a "wash," instead of the maximum amount justified by the evidence, then Eden Gate and not D & L has suffered.
D & L cites Bixler v. First National Bank, 49 Or.App. 195, 202, 619 P.2d 895 (1980), for the proposition that
"[a]ctual damages must be established by evidence upon which their existence and amount may be determined with reasonable certainty * * * and `when compensatory damages are susceptible of proof with approximate accuracy the necessary evidence *239 must be supplied.'" (Citation omitted.)
Bixler, however, does not help D & L. It is clear from the context in which the quotation appears that it means a plaintiff must provide evidence establishing with reasonable certainty that the amount of damages received is not excessive. Neither Bixler nor any other case we can find holds or even hints that a damage award lower than one justified by the evidence is error merely because it does not precisely match identified quantifiable harm.
We therefore affirm the Multnomah County trial court on the amount of the damages it awarded to Eden Gate.

III. PRECLUSIVE EFFECT OF MULTNOMAH COUNTY LITIGATION
Each party to this litigation moved the Yamhill County court for summary judgment, arguing that the Multnomah County litigation preclusively decided all issues in its favor. The Multnomah County court's letter opinion stated:
"The Court finds for the plaintiff [Eden Gate] on the breach of contract claim in the amount of $29,173.32. The Court finds for the defendant [D & L] on all the remaining claims."[1]
D & L focused on the second sentence of the letter opinion. As noted above, one of the "remaining claims" that the court decided in D & L's favor was Eden Gate's claim for a judgment declaring that Eden Gate did not owe D & L $29,173.32, that D & L's lien was therefore invalid, and that D & L consequently was enjoined from foreclosing on the lien. D & L argued that in deciding for it on that claim, the Multnomah County court necessarily decided that Eden Gate did owe D & L $29,173.32, that D & L's lien was valid, and that D & L could foreclose on the lien. Eden Gate, for its part, focused on the first sentence of the Multnomah County court opinion, arguing that by awarding damages to Eden Gate for D & L's breach of contract, the court necessarily decided that Eden Gate did not owe D & L money stemming from a dispute over that same contract. The Yamhill County court agreed with Eden Gate. In a letter opinion of July 15, 1999, it stated:
"I conclude that D & L is precluded from, in this case, re-litigating the issue of money owed by Eden Gate. I * * * conclude that when [the Multnomah County court] found D & L owed Eden Gate money on the breach of contract claim, this had the effect of saying the balance was not due to D & L. This is the very issue in the case before this court. Further, with no money due D & L, there is no basis for a lien. There are no issues in this case, then, that were not litigated and decided in the Multnomah County case. D & L is precluded from re-litigating this issue." (Footnote omitted.)
Insofar as this opinion denies D & L's motion for summary judgment, we agree. Insofar as it grants Eden Gate's, we disagree.
In an appeal from a judgment that results from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review. Cochran v. Connell, 53 Or.App. 933, 939-40, 632 P.2d 1385, rev. den. 292 Or. 109, 642 P.2d 311 (1981). Each party that moves for summary judgment has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. Jones v. General Motors Corp., 325 Or. 404, 939 P.2d 608 (1997); *240 McKee v. Gilbert, 62 Or.App. 310, 321, 661 P.2d 97 (1983). We review the record for each motion in the light most favorable to the party opposing it. Yartzoff v. Democrat-Herald Publishing Co., 281 Or. 651, 655, 576 P.2d 356 (1978).
We turn first to the denial of D & L's motion for summary judgment. The Supreme Court has explained issue preclusion as follows:
"If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment." North Clackamas School Dist. v. White, 305 Or. 48, 53, 750 P.2d 485 (1988).
In Multnomah County, Eden Gate, as noted, requested a declaratory judgment that it did
"not owe D & L the sum of $29,173.32 and therefore * * * D & L's lien is invalid, and is of no effect; [and that] D & L is enjoined from foreclosing on its lien and is ordered to remove the lien from the [p]laintiff['s] property."
We are not persuaded by D & L's argument that the decision in its favor on this claim had the effect of determining that Eden Gate still owed D & L money and that D & L's lien was valid. In general, a decision that one party does not qualify for a declaratory judgment stating a conclusion does not invariably imply that the opposite conclusion has been proved. Declaratory relief is discretionary; a court might reject a claim for it because, for example, another proceeding between the parties is pending, Nelson v. Knight, 254 Or. 370, 372, 460 P.2d 355 (1969), or because of mootness concerns, Brumnett v. PSRB, 315 Or. 402, 406, 848 P.2d 1194 (1993). More particularly, the Multnomah County decision here, in its entirety, consisted of two bare statements: "The court finds for defendant on all remaining claims," and "The court expressly directs that final judgment be entered * * * for Defendant on the remaining claims." From this record, we could infer that the court intended to award Eden Gate $29,173.32 in damages and permit D & L to recoup that exact amount by foreclosing on its lien, thereby creating a "wash," but that is not the only inference. This recordviewed, we emphasize, in favor of the nonmoving partydoes not demonstrate that the court made a "decision on a particular issue or determinative fact," North Clackamas School Dist., 305 Or. at 53, 750 P.2d 485, involving the continuing validity of Eden Gate's alleged debt to D & L. We therefore affirm the Yamhill County court's denial of D & L's motion for summary judgment.
We turn now to Eden Gate's preclusion claim. Eden Gate asserted below, and the Yamhill County court agreed, that because the Multnomah County court awarded it damages for D & L's breach of contract, "[l]ogically, this award means that Eden Gate did not owe any additional money to D & L." We disagree. Again, although one inference flowing from the record is that the Multnomah County court's award to Eden Gate represents the court's decision to capture all of the various and conflicting debt claims into a single net award, there is no evidence to that effect in any of the court's letter opinions or its judgment. D & L's competing theory, that the Multnomah County court, in awarding the exact amount of the lien, intended a "wash"in which case Eden Gate would still owe to D & L the exact amount on the outstanding lien that Eden Gate had received from D & L in damagesis also plausible, as we noted in our discussion of D & L's preclusion claim. Further, on this record, the lien could be unrelated to the breach. Viewing the record in the light most favorable to D & L, then, we conclude that the Yamhill County court erred in granting summary judgment in favor of Eden Gate.
D & L's third assignment of error concerns the attorney fee award of $79,957.65 that the Yamhill Court made on May 22, 2000, to Eden Gate in connection with granting its motion for summary judgment. Because the underlying judgment has been reversed by this court, the award of attorney fees is also reversed. ORS 20.220(3)(a).
Multnomah County Circuit Court judgment on Eden Gate's breach of contract claim and damages award affirmed; Yamhill County Circuit Court judgment granting Eden Gate's motion for summary judgment, *241 dismissing D & L's lien, and awarding attorney fees to Eden Gate reversed and remanded; otherwise affirmed.
NOTES
[1] In a later letter, the Multnomah County court wrote:

"The plaintiff prevailed on its first claim for relief (Breach of Contract). * * * The plaintiff's fourth claim for relief sought a declaratory judgment regarding the Yamhill County lien for debts outstanding. The court did not reach the validity of the lien."
Because the court wrote this letter after D & L had filed its notice of appeal, D & L argues that it is not properly part of the record because the court did not have jurisdiction over the case at that time. Eden Gate maintains that, because the letter was part of a supplemental judgment regarding costs and attorney fees, it is in the record because the court retained jurisdiction under ORCP 68 C(5)(b) over "any issue regarding * * * costs." We need not decide this dispute, however, because even if we were to consider the letter as part of the record, we would conclude that it does not add to or clarify the original letter opinion.