Argued and submitted December 30, 2010, judgment modified to dismiss petitioners' interpretation and modification claims as moot; otherwise affirmed December 14, 2011

In the Matter of the Saling Family Trust,
u/a/d March 19, 1996.

Jon FRAKES,
Personal Representative of the
Estate of Raymond J. Frakes, Deceased,
*Respondent-Appellant,*

*v.*

Tim NAY,
in his capacity as
Successor Trustee of the Saling Family Trust;
and Carol and Velma Saling Foundation,
an Oregon charitable corporation,
*Petitioners-Respondents.*

Multnomah County Circuit Court
080190166; A140655

273 P3d 137

Andrew T. Reilly argued the cause for appellant. With him on the briefs was Black Helterline LLP.

Matthew Whitman argued the cause for respondents. With him on the brief were Cartwright and Associates, Philip N. Jones, and Duffy Kekel LLP.

Before Armstrong, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Respondent Frakes,[1] a beneficiary of the Saling Family Trust (the trust), appeals the trial court's grant of summary judgment in favor of petitioners, the Carol and Velma Saling Foundation (the foundation), which is another beneficiary of the trust, and Nay, the trustee of the trust. The trial court concluded that the terms of the trust entitle respondent to receive two distributions of money from the trust, not three. It further concluded that, if the trust otherwise provides for three distributions of money to respondent, then the trust is reformed pursuant to ORS 130.220, a provision of the Uniform Trust Code (UTC), and modified pursuant to ORS 130.225, another provision of the UTC, to provide for only two distributions to respondent.[2] Respondent assigns error to the court's grant of summary judgment in favor of petitioners on all of their claims and to its failure to grant summary judgment in his favor. We conclude that the court correctly granted summary judgment in petitioners' favor on their reformation claim and modify the judgment in accordance with that conclusion.

Carol and Velma Saling (the settlors) created a trust in 1990 that directed the trustee to distribute to respondent, who is Velma Saling's nephew, and several other individuals, a total of $1,150,000 upon the death of both of the settlors.[3]

---

[1] The respondent in the proceedings below, Raymond Frakes, died while this case was on appeal, and the personal representative of his estate, Jon Frakes, was substituted for him. For convenience, the respondent to whom we refer throughout this opinion is Raymand Frakes. As is our usual practice, we refer to the parties by their designations below.

[2] ORS 130.220 provides:

"The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if the person requesting reformation proves by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."

ORS 130.225 provides:

"The court may modify the terms of a trust to achieve the settlor's tax objectives if the modification is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect."

[3] The parties suggest that the 1990 version of the trust directed the trustee to distribute a total of $1,200,000 in specific cash distributions, but our reading of the original trust indicates that, following the death of the last surviving settlor, the trust would have made one distribution of $100,000, one distribution of $1,000,000,

The settlors amended the trust in 1996. The amended trust provides that the Oregon law of wills in effect when the parties created the trust governs the trust for purposes of determining the rights of the beneficiaries. Following Carol's death in 2002, the trustee divided the trust assets, as the trust directed, into two equal parts, a Survivor's Trust and a Decedent's Trust. The trust directed the trustee to distribute to the survivor as much of the income and principal of the Survivor's Trust as the survivor requested.

The trust further directed the trustee to divide the assets of the Decedent's Trust into a Credit Shelter Trust and a Marital Deduction Trust and to make certain distributions from the assets allocated to the Credit Shelter Trust. Although the trustee did not form the Credit Shelter Trust as the trust directed, he did use assets of the Decedent's Trust to make the Credit Shelter Trust distributions, which included a $500,000 distribution to respondent and distributions to other beneficiaries totaling $100,000. He allocated all of the remaining assets of the Decedent's Trust to the Marital Deduction Trust. The trust further directed the trustee to distribute the Marital Deduction Trust's income to the survivor and as much of its principal as the survivor requested.

Following Velma's death in 2004, the trustee distributed from the assets of the Survivor's Trust, as paragraph 8.3 of the trust directed, another $500,000 to respondent and $100,000 to the other beneficiaries. That distribution occurred in February 2005. Before that second round of distributions, respondent made at least two requests to the trustee for an accounting of the trust. The trustee never provided the requested accounting, and when he made the second round of distributions, he expressly declined to provide an accounting to respondent on the ground that respondent no longer had any interest in the trust.

In July 2005, respondent filed an action against the trustee, demanding an accounting of the trust and reimbursement of funds that respondent had spent on behalf of Velma. On the first day of trial in that case (the first proceeding), respondent contended for the first time that the trust required the trustee to make a third round of distributions in

---

and two distributions of $25,000, for a total of $1,150,000. The trust directed the trustee to distribute the balance of the trust assets to the foundation.

addition to the two that had already been made. The trustee argued that he was not on notice that respondent would make such a claim and that, if respondent prevailed on the claim, it would affect the foundation, which had not been joined as a party in the action. The trial court decided to defer ruling on the issue after petitioners agreed that, in any subsequent proceeding, they would argue the merits of the issue and would not assert any defense that was unavailable to them in the first proceeding.

In January 2008, the trustee filed an action seeking an interpretation of the trust, which action is the subject of this appeal. The foundation joined the trustee in the action, and respondent, whom the trustee had notified of the action, opposed it and filed a counterclaim. The parties disputed the meaning and effect of paragraph 10.3.2 of the trust, which, after the death of the surviving settlor, directs the trustee to distribute the assets remaining in the Marital Deduction Trust in accordance with paragraph 8.3.

Petitioners contended that the only sensible interpretation of the trust is that it provides for two rounds of specific distributions, and they asked the court to interpret the trust to so provide. They also alleged claims to (1) reform the trust, pursuant to ORS 130.220, to conform it to the settlors' intent and (2) modify the trust, pursuant to ORS 130.225, to conform it to the settlors' tax objectives.

The latter two claims sought to alter paragraph 10.3.2 of the trust so that it directs the trustee to distribute the assets remaining in the Marital Deduction Trust according to paragraph 8.3.2 rather than paragraph 8.3. If the trustee distributed the remaining assets according to paragraph 8.3, then he would have to make a third round of specific monetary distributions before distributing the balance of the assets to the foundation. Conversely, if he distributed the assets according to paragraph 8.3.2, then he would distribute all of the remaining assets to the foundation.

Respondent contended that the trust unambiguously required the trustee to make an additional round of specific distributions from the assets of the Marital Deduction Trust, and he asked the court to issue a judgment declaring the trust to so require. He further contended that petitioners were not entitled to relief on their claims to reform or

modify the trust under the UTC because the trust provides that it is governed by the law of wills in effect at the time that the trust was created. According to respondent, it would violate that provision to apply the UTC to the trust because the settlors had created the trust before Oregon adopted the applicable provisions of the UTC.

Petitioners moved for summary judgment on all of their claims, and respondent filed a cross-motion for summary judgment on his counterclaim.

In support of their motion for summary judgment, petitioners provided, among other evidence, two letters from the trustee to Carol discussing how the 1996 amendments to the trust would affect distributions to the trust beneficiaries; declarations of the trustee and of Jackie Appleton, a paralegal who had worked with the settlors in developing their estate plan; and an excerpt of a deposition of respondent.

In one of the letters, the trustee told Carol that the 1996 changes to the trust would not affect the amount that the individual beneficiaries would receive under the trust.[4] In the other letter, the trustee told Carol that the specific monetary distributions to be made pursuant to the amended trust would use up the settlors' two $600,000 unified federal tax credits.[5] That letter listed each cash distribution that the amended trust would direct the trustee to make, including two distributions of $500,000 to respondent.

In the trustee's declaration, he stated that, in the process of amending the trust, the settlors expressed to him their intention that the trust "give the total amount

---

[4] We once again note (see 247 Or App at 97 n 2) that we understand the 1990 trust to direct the trustee to make distributions to respondent and several other beneficiaries totaling $1,150,000. Thus, even if the amended trust directs the trustee to distribute only $1,200,000 to the individual beneficiaries, the amendments increased the amount that the trust directs the trustee to distribute to those individuals.

[5] At the time that the settlors amended the trust, the Internal Revenue Code provided that an individual, through bequests at death, could distribute a total of $600,000 without incurring estate tax. IRC § 2010 (1994), *amended by* Pub L 101-508, § 11801(a)(39), (c)(19)(A), 104 Stat 1388-521, 1388-528 (1997). Although the parties hotly dispute how much the settlors' desire to avoid taxes influenced the terms of the trust, we need not determine the settlors' tax objectives in order to resolve the appeal.

allowed by the unified credit to family members—including $1,000,000 total" to respondent.

Appleton stated in her declaration that, in the process of drafting the 1990 trust,

"Carol Saling provided us with a chart he had drawn which set forth a proposed distribution of the amount to be distributed to various family members, including a total of $1,000,000 to be distributed to [respondent]. * * * That chart reflects my understanding of the [the settlors'] intent: they wanted to pass the maximum amount of money they could tax-free to relatives, then give the entire residue of their estate to their Foundation[.]"

She further declared that the settlors, in the process of amending the trust in 1996, had not changed their overall testamentary intent and that Carol specifically told her, with regard to respondent, that $1,000,000 "is enough for anybody."

In the excerpt of respondent's deposition, he acknowledged that, a year before Carol died—*viz.*, five years after the 1996 amendment of the trust—Carol told him that he would receive two $500,000 distributions, one following the death of each settlor.

The trial court granted petitioners' motion for summary judgment and denied respondent's cross-motion. The court concluded that, under the terms of the trust, the specific beneficiaries were entitled to two distributions from the trust, one on the death of the first settlor and one on the death of the second. In the alternative, the court reformed and modified paragraph 10.3.2 to distribute the remaining assets of the Marital Deduction Trust according to paragraph 8.3.2 instead of paragraph 8.3.

On appeal, respondent contends that the trial court's grant of summary judgment in petitioners' favor was erroneous and that he was entitled to summary judgment instead because the trust unambiguously directs the trustee to make three rounds of distributions.

In an appeal from a judgment involving cross-motions for summary judgment, both motions are subject to review if the parties have assigned error to the trial court's

rulings on them. We review the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002).

Although the opposing parties contend that the terms of the trust unambiguously support their respective interpretations of it, we need not resolve that issue in order to resolve this appeal. ORS 130.220 authorizes courts to reform the terms of a trust, even if those terms are unambiguous; thus, we need not determine whether the trust is ambiguous if we conclude that the trial court did not err in granting summary judgment in petitioners' favor on their ORS 130.220 reformation claim.

The Oregon version of the UTC "applies to all trusts created before, on or after January 1, 2006." ORS 130.910(1)(a). However, the UTC does not apply to judicial proceedings commenced before January 1, 2006. ORS 130.910(1)(b). Petitioners commenced this case after that date, and, thus, the UTC applies to it.

The trial court in the first proceeding agreed not to decide whether the trust directed the trustee to make a third round of distributions because petitioners agreed that, if the distribution issue were presented in a subsequent proceeding, they would not raise any defenses unavailable to them in the first proceeding and instead would contest the issue on the merits. Respondent contends that petitioners' agreement not to raise any defenses unavailable to them in the first proceeding prevents them from asserting that the trust should be reformed pursuant to the UTC. He contends that the UTC did not apply in the first proceeding because it had been commenced before 2006 and, thus, petitioners are unable to reform the trust pursuant to the UTC because they agreed not to raise any defenses unavailable to them in the first proceeding.

Petitioners did not violate their agreement regarding the assertion of defenses in this proceeding by seeking relief on their reformation claim in accordance with the law that is applicable to it, *viz.*, the UTC. The application of the

UTC in the first and any subsequent proceeding was discussed among the parties and the court in the first proceeding, with petitioners asserting that the UTC would be applicable without regard to whether the dispute over the number of distributions was resolved in the first or a subsequent proceeding. In deferring a decision on the distribution dispute, the court framed petitioners' agreement regarding the effect of the deferral as an agreement not to "raise any statute of limitations questions" and to address the dispute on its merits. In the judgment that concluded the first proceeding, the court described petitioners' agreement as an agreement

> "not [to] assert in any new proceeding any defense not available to [them] in [the first] proceeding including without limitation thereto, statute of limitations, laches, *res judicata*, issue preclusion, claim preclusion, collateral estoppel, or failure to have the third distribution issue heard in this proceeding."

We understand that language to refer to matters constituting an avoidance or affirmative defense of the type identified in ORCP 19 B. In light of that language and petitioners' assertion to the court that they intended to rely on the UTC in any subsequent proceeding, we conclude that the trial court did not err in rejecting respondent's contention that petitioners were barred from asserting claims under the UTC in this proceeding.

Respondent next contends that the court erred in reforming the trust pursuant to the UTC because such a reformation is contrary to the trust's choice of law. The trust states that the Oregon law of wills in effect at the time that the settlors created the trust governs the determination of the rights of beneficiaries. Respondent contends that the law of wills does not permit modification or reformation of unambiguous testamentary language and, thus, reforming the trust would violate the settlors' express testamentary intent.

The terms of a trust do not prevail over "[t]he power of the court to modify * * * a trust under ORS [130.220] * * *." ORS 130.020(2)(d). Therefore, a court may reform the trust pursuant to the UTC despite the trust's choice-of-law provision.

ORS 130.220 permits a court to reform a trust to conform its terms to the settlor's intention if the party seeking reformation proves by clear and convincing evidence that the terms of the trust were affected by a mistake of fact in expression, such as where a drafting error causes the terms of the trust to misstate the settlor's intention. Therefore, the court properly reformed paragraph 10.3.2 if petitioners proved that paragraph 10.3.2 misstates the settlors' intention. Because the trial court reformed the trust on summary judgment, our decision on that issue turns on whether the evidence in the record established that there is no genuine issue of material fact as to whether paragraph 10.3.2 correctly expressed the settlors' intention.

Petitioners offered extrinsic evidence that demonstrated that the settlors intended the trust to make two rounds of specific monetary distributions totaling $1,200,000, $1,000,000 of which they intended to distribute to respondent. One of the letters that the trustee sent to Carol in the course of amending the trust told Carol that the amended trust would distribute a total of $1,000,000 to respondent and an additional $200,000 to other beneficiaries. In her declaration, Appleton stated that, in amending the trust, Carol provided her with a chart demonstrating that he intended the trust to distribute a total of $1,000,000 to respondent. The trustee's declaration also stated that the settlors expressed to him their intention that the trust distribute a total of $1,000,000 to respondent. Finally, respondent acknowledged in his deposition that Carol told him, while the amended trust was in effect, that he would receive two $500,000 distributions.

Although respondent contends that the trust cannot be reformed on summary judgment because the evidentiary record presents genuine issues of material fact as to the settlors' intent, he offered no evidence that indicates that the settlors intended the trust to make three rounds of specific monetary distributions, *viz.*, that the settlors intended respondent to receive $1,500,000 from the trust rather than $1,000,000. Instead, he argues that Velma's testamentary intent was to distribute everything that she had to him and that petitioners' extrinsic evidence only established Carol's

intent. We reject that argument because the trustee's declaration states that it was the intent of both settlors to distribute a total of $1,000,000 to respondent, and respondent offered no evidence that indicates that the settlors had different intentions for the trust when they executed it.

Respondent did submit Velma's 1959 will as evidence to support his contention that she intended to leave all of her property to him. Velma's 1959 will has no bearing on the settlors' intention because nothing indicates that Velma intended the trust to accomplish the same objectives as her 1959 will.[6] Nor would the fact that Velma's 1959 will left everything to respondent indicate how the settlors intended paragraph 10.3.2 to distribute the Marital Deduction Trust's remaining assets. Thus, Velma's 1959 will does not constitute evidence that creates a genuine issue of material fact for trial.

Respondent further contends that the record demonstrates that the settlors intended the trust to distribute the maximum amount available under the federal unified tax credit, not just $1,200,000. He specifically argues that the declarations of the trustee and Appleton indicate that the settlors had such a testamentary intent. The trustee acknowledged in his declaration that the settlors "wanted to give the total amount allowed by the unified credit to family members," and Appleton acknowledged in her declaration that the settlors "still wanted to give the maximum amount possible tax-free to their relatives[.]"

Respondent takes that evidence out of context. The statements of both Appleton and the trustee were made in the context of explaining the considerations behind the settlors' decision to distribute a total of $600,000 following the death of each settlor. Those statements do not indicate that the settlors intended the trust to direct the trustee to alter the amount of money that the trust distributes in response to changes in federal tax law and have no bearing on whether the trustees intended the trust to provide for more than two

---

[6] The trust granted the survivor a general power of appointment over the Marital Deduction Trust. As the survivor, Velma could have—to the extent that she had intended to distribute her entire estate to respondent—exercised that power in favor of him. Velma did not do that.

rounds of specific distributions. Thus, those statements do not present a genuine issue of material fact relevant to reformation of the trust pursuant to ORS 130.220.

Based on the record in this case, we conclude that the trial court correctly determined that there is no genuine issue of material fact on whether the settlors intended the trust to provide for more than two rounds of distributions. Therefore, the direction to the trustee in paragraph 10.3.2 to distribute the assets remaining in the Marital Deduction Trust according to paragraph 8.3 is a mistake in expression, and the trial court properly reformed paragraph 10.3.2 to direct the trustee to distribute those assets according to paragraph 8.3.2 rather than paragraph 8.3. In light of that conclusion, we affirm the portion of the court's judgment reforming the trust pursuant to ORS 130.220 and modify the judgment to remove the court's alternative rulings on petitioners' other claims.[7]

Judgment modified to dismiss petitioners' interpretation and modification claims as moot; otherwise affirmed.

---

[7] Petitioners sought to achieve the same ultimate relief on all three of their claims, *viz.*, a determination that respondent is entitled to two, rather than three, distributions of funds from the trust. Because we have concluded that the trial court did not err in granting summary judgment in petitioners' favor on their reformation claim, we need not, and do not, address whether the court correctly granted summary judgment on the other claims. Accordingly, it is appropriate to modify the judgment to affirm the trial court's decision on the reformation claim and to dismiss the other claims as moot.